334

AMERICAN SECURITY & TRUST COMPANY AND MARY H. LINCOLN, EXECUTORS, ESTATE OF ROBERT TODD LINCOLN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 39167.   Promulgated October 16, 1931.

*J. R. Sherrod, Esq., Robert N. Miller, Esq., Norman B. Frost, Esq.,* and *Frederic N. Towers, Esq.,* for the petitioners.

*Frank T. Horner, Esq.,* for the respondent.

*Paul Kieffer, Esq.,* and *Elihu Root, Jr., Esq.,* as *amici curiae.*

*G. A. Donohue, Esq., Laurence Graves, Esq.,* and *Ike Lanier, Esq.,* as *amici curiae.*

*Frank S. Bright, Esq.,* and *James H. Hughes, Jr., Esq.,* as *amici curiae.*

OPINION.

MATTHEWS: The provisions of the Revenue Act of 1926 relevant to the three issues here raised are as follows:

SEC. 301. (a) In lieu of the tax imposed by Title III of the Revenue Act of 1924, a tax equal to the sum of the following percentages of the value of the net estate (determined as provided in section 303) is hereby imposed upon the transfer of the net estate of every decedent dying after the enactment of this act, whether a resident or nonresident of the United States;

\*          \*          \*          \*          \*          \*          \*

SEC. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

(a) To the extent of the interest therein of the decedent at the time of his death;

\*          \*          \*          \*          \*          \*          \*

(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. Where within two years prior to his death but after the enactment of this Act and without such a consideration the decedent has made a transfer or transfers, by trust or otherwise, of any of his property, or an interest therein, not admitted or shown to have been made in contemplation of or intended to take effect in possession or enjoyment at or after his death, and the value or aggregate value, at the time of such death, of the property or interest so transferred to any one person is in excess of $5,000 then, to the extent of such excess, such transfer or transfers shall be deemed and held to have been made in contemplation of death within the meaning of this title. \*  \*  \*

\*          \*          \*          \*          \*          \*          \*

(e) To the extent of the interest therein held as joint tenants by the decedent and any other person, or as tenants by the entirety by the decedent and spouse, or deposited, with any person carrying on the banking business, in their joint names and payable to either or the survivor, except such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than an adequate and full consideration in money or money's worth: *Provided*, That where such property or any part thereof, or part of the consideration with which such property was acquired, is shown to have been at any time acquired by such other person from the decedent for less than an adequate and full consideration in money or money's worth, there shall be excepted only such part of the value of such property as is proportionate to the consideration furnished by such other person: \*  \*  \*

1. The first issue with respect to the two checking accounts in the Manchester and Washington banks, in the amounts, respectively, of $17,311.69 and $34,323.02, can be disposed of under subsection (e) quoted above. The petitioners originally contended that these joint bank accounts were held by the spouses as tenancies by the entireties

and therefore constituted no part of decedent's gross estate, or in the alternative that they were joint tenancies and as such should likewise be excluded. In view of the decision of the United States Supreme Court in *Tyler* v. *United States*, 281 U. S. 497, the petitioners abandoned their original position and now contend that on the evidence that deposits in an undetermined amount were made to these accounts by the surviving spouse, we should apply the presumption employed in *Sophia Weil, Administratrix*, 15 B. T. A. 965, that each tenant contributed an equal amount, and accordingly hold that not more than one-half of the sum of these accounts should be included in decedent's gross estate.

The ruling made by this Board in *Sophia Weil, Administratrix, supra*, relative to the presumption as to amounts contributed to joint bank accounts, was definitely overruled in *Herbert D. Robinson, Executor*, 21 B. T. A. 1373. There being no evidence as to the amount deposited by Mrs. Lincoln in the two bank accounts, and no presumption that she contributed half, the total amount in the joint bank accounts is required to be included in the gross estate under the terms of section 302 (e).

2. The respondent correctly included the value of the Rolls-Royce automobile in the gross estate under the provisions of section 302 (a). The evidence is clear that both decedent and Mrs. Lincoln considered and treated the car as a gift from Mrs. Lincoln to her husband. It was his property at the time of his death and the value of the car at that time was properly included in the gross estate.

3. Under the third issue, the constitutionality of the following provision in subdivision (c) of section 302 is challenged:

* * * Where within two years prior to his death but after the enactment of this Act and without such a consideration the decedent has made a transfer or transfers, by trust or otherwise, of any of his property, or an interest therein, not admitted or shown to have been made in contemplation of or intended to take effect in possession or enjoyment at or after his death, and the value or aggregate value, at the time of such death, of the property or interest so transferred to any one person is in excess of $5,000, then, to the extent of such excess, such transfer or transfers shall be deemed and held to have been made in contemplation of death within the meaning of this title. * * *

The gifts to Mrs. Lincoln were made after the passage of the Revenue Act of 1926. There was no consideration. The transfers took effect immediately and they were not admitted or shown to have been made in contemplation of death. Mr. Lincoln died within two years after making the gifts. The aggregate value, at the time of his death, of the securities transferred to Mrs. Lincoln, plus the accrued interest and dividends thereon, was in excess of $5,000 and such excess was $1,250,195.86. There is no dispute as to these facts.

Under the challenged provision of the statute the transfers to the extent of $1,250,195.86 were made in contemplation of death. The value of transfers made in contemplation of death is required to be included in the gross estate of the decedent under the first provision in section 302 (c).

On this issue there is no question of the construction of the statute. The tax is plainly imposed by the explicit language of sections 301 and 302 (c). Petitioners challenge the validity of the tax on the ground that the provision in section 302 (c), under which the transfers are conclusively presumed to have been made in contemplation of death, is in violation of the Fifth Amendment of the Constitution and of Article 1, sections 8 and 9, in that the attempt of Congress to legislate a fact would have the result, in this case, of taking the petitioners' property without due process of law, and also in that an arbitrary and unreasonable classification of gifts and tax thereon is attempted to be established, resulting in a lack of uniformity. They submit that the Supreme Court has passed on a similar question in *Schlesinger* v. *Wisconsin*, 270 U. S. 230, and that the court's decision in that case is controlling here.

The petitioners concede that it would have been entirely legal for Congress to apply an excise tax to the making of gifts *inter vivos*, but submit that such a tax must be contained in an act the title of which concerns gifts *inter vivos*, and that " Title III—Estate Tax " of the Revenue Act of 1926, which contains section 302, is not broad enough to include thereunder a tax on gifts *inter vivos*, except such gifts as were actually made in contemplation of death.

The respondent takes the position that it is necessary to establish but few facts in order to sustain his action and those facts are: (1) date of the decedent's death; (2) date of the gift or gifts; (3) value of property transferred; and (4) that the transfers in fact constituted gifts and not sales. He did not admit in his answer or at the hearing that the transfers were not made in contemplation of death, and evidence as to the motive of the gift and the mental and physical condition of decedent was received by the Board over the objection of respondent, such objection being based on the contention that under the statute any such evidence is inadmissible.

Respondent also takes the position that although the petition in this case raises the question of the constitutionality of the Act, the Board is without authority to pass upon such question or to declare an Act of Congress unconstitutional, as the Board is an independent agency in the executive branch of the Government, and is not a court. He further contends that as the case of *Schlesinger* v. *Wisconsin*, *supra*, relied on by petitioner, involves the power of a State to declare

taxable transfers made by decedents within six years prior to death, it is not controlling in the instant case.

Respondent argues that both the first and second provisions of section 302 (c) are applicable to the present situation and should the second be held unconstitutional, the decedent's estate is still liable under the first provision. His brief is mainly directed to pointing out certain testimony which, it is urged, indicates that Mr. Lincoln must have been contemplating death at the time of the gifts and, therefore, that the gifts were in fact made in contemplation of death and are taxable under the first provision of section 302 (c.)

We agree with respondent's contention that under the challenged provision there is a conclusiveness which admits no proof to the contrary. We think, however, that in the instant case evidence as to the motive of the gift and the state of decedent's health was admissible in view of the findings of the Commissioner.

In his notice of deficiency, the Commissioner advised the petitioners, with respect to the property transferred to Mrs. Lincoln, that:

The value of the following described property, transferred by the decedent prior to death, is included in the gross estate, it having been * * * determined after consideration of all the facts that such transfers were made in contemplation of death:

| | |
|---|---:|
| $100,000.00 4% bonds of the Norfolk & Western Pocahontas Coal and Coke Co. | $92, 125. 00 |
| Accrued interest on above | 611. 11 |
| 5,000 shares of the National Biscuit Co. common stock, | 462, 500. 00 |
| 5,063 shares of Commonwealth Edison Company | 689, 833. 75 |
| Dividends on above, | 10, 126. 00 |
| Total less exemption of $5,000, allowable under the Federal Estate Tax Law | $1, 250, 195. 86 |

It is from such determination that the petition was filed.

It will be noted that the Commissioner determined that the total gifts were transfers made in contemplation of death and that he treated $5,000 as an exemption " allowable under the Federal Estate Tax Law."

The presumption of the Act does not apply to the total value of the gifts, but only to the value in excess of $5,000. While the effect as to the amount to be included is the same as if the law had provided for an exemption of $5,000, only the excess over $5,000 is conclusively presumed to have been made in contemplation of death. There is no exemption allowable under the law.

The determination of the Commissioner that the total transfers were made in contemplation of death is prima facie correct. We conceive it our duty that where two provisions of a statute are applicable, we should dispose of the case under that provision whose

constitutionality is unquestioned and only, if this is impossible, proceed to apply the provision of questionable constitutionality. *United States* v. *Delaware & Hudson Co.*, 213 U. S. 366, 407, 408. In the circumstances, therefore, we think it was incumbent on petitioners to offer proof to overcome the prima facie presumption and that it was proper for the Board to admit the evidence offered as to the motive for the gifts and as to the mental and physical condition of decedent at the time of the gift and to date of death. If no proof had been offered or on failure of proof the Board would have been obliged to find that the transfers were in fact made in contemplation of death and to include in the gross estate the total value of the gifts, instead of the value in excess of $5,000. Proof that the gifts were not in fact made in contemplation of death, leaves the gifts, to the extent that they were in excess of $5,000, subject to the statute under which such excess is conclusively presumed to have been made in contemplation of death.

In reaching the conclusion that the gifts were not made in contemplation of death, but were made for the purpose of equalizing income taxes, we have weighed carefully all the evidence submitted and have given particular consideration to the evidence stressed by respondent. The testimony of decedent's lawyer and secretary, Mr. Towers, with respect to the motive of the gift, is clear and convincing and is uncontradicted. It was supported by Mrs. Lincoln's testimony. It was Towers and his associate, Mr. Frost, who suggested that means of reducing income taxes. The testimony as to the motive of the gift, and that of the doctor, Mrs. Lincoln, and Mr. Towers, showing that at the time of the gift the decedent was enjoying the normal good health of a man of his years, that there was no change in his condition from such time until his death, and that death came in his sleep and was unexpected by his physician and all those with whom he was in daily contact, convinces us that the gift was not made in contemplation of death, but was made for the purpose of reducing income taxes.

This Board and the courts have held that where the motivating cause of the gift was the reduction of income taxes, the gift was not made in contemplation of death. *Spencer Borden, Jr., Executor*, 6 B. T. A. 255; *Vaughan* v. *Riordan*, 280 Fed. 742.

The principles we have applied in reaching the conclusion that the gifts were not in fact made in contemplation of death are in accordance with the principles laid down in *United States* v. *Wells*, 283 U. S. 446, decided April 13, 1931, in which the Supreme Court construed in the meaning of the phrase " in contemplation of death " as used in the estate tax acts. The court, through Mr. Chief Justice

Hughes, who rendered the opinion, refers to the previous use of the phrase in state statutes, and explains its meaning as follows:

The phrase "in contemplation of death" previously found in state statutes, was first used by the Congress in the Revenue Act of 1916, imposing an estate tax. It was coupled with a clause creating a statutory presumption in case of gifts within two years before death. The provision was continued in the Revenue Act of 1918, which governs the present case, and in later legislation. While the interpretation of the phrase has not been uniform, there has been agreement upon certain fundamental considerations. It is recognized that the reference is not to the general expectation of death which all entertain. It must be a particular concern, giving rise to a definite motive. * * * The statutory description embraces gifts *inter vivos*, despite the fact that they are fully executed, are irrevocable and indefeasible. The quality which brings the transfer within the statute is indicated by the context and manifest purpose. * * * The dominant purpose is to reach substitutes for testamentary dispositions and thus to prevent the evasion of the estate tax. *Nichols* v. *Coolidge*, 274 U. S. 531, 542; *Milliken* v. *United States*, decided March 2, 1931, 283 U. S. 15. As the transfer may otherwise have all the indicia of a valid gift *inter vivos*, the differentiating factor must be found in the transferor's motive. Death must be "contemplated", that is, the motive which induces the transfer must be of the sort which leads to testamentary disposition. * * *

* * * Old age may give premonitions and promptings independent of mortal disease. Yet age in itself cannot be regarded as furnishing a decisive test, for sound health and purposes associated with life, rather than with death, may motivate the transfer. The words "in contemplation of death" mean that the thought of death is the impelling cause of the transfer, * * *.

If it is the thought of death, as a controlling motive prompting the disposition of property, that affords the test, it follows that the statute does not embrace gifts *inter vivos* which spring from a different motive. Such transfers were made the subject of a distinct gift tax, since repealed. * * *

The reduction of income taxes is a purpose associated with life.

As the gifts were not in fact made in contemplation of death, this disposes of the question that they are taxable by virtue of the first provision in section 302 (c) alone. We must, therefore, consider the question raised as to the conclusive presumption provision of the same subsection. This brings us back to the petitioner's contention that the invalidity of this provision has in effect already been decided by the Supreme Court in *Schlesinger* v. *Wisconsin*, *Supra*, by reason of its holding unconstitutional a very similar provision in a state statute. We are urged to apply the principle of that case to the instant case.

*Schlesinger* v. *Wisconsin*, *supra*, involved that part of the Wisconsin statute which provides as follows:

A tax shall be and is hereby imposed upon any transfer of property, real, personal or mixed * * * to any person * * * within the state, in the following cases, except as hereinafter provided:

(1) When the transfer is by will or by the intestate laws of this state from any person dying possessed of the property while a resident of the state.

(2) When a transfer is by will or intestate law, of property within the state or within its jurisdiction and the decedent was a nonresident of the state at the time of his death.

(3) When the transfer is of property made by a resident or by a nonresident when such nonresident's property is within this state, or within its jurisdiction, by deed, grant, bargain, sale or gift, made in contemplation of the death of the grantor, vendor, or donor, or intended to take effect in possession or enjoyment at or after such death. *Every transfer by deed, grant, bargain, sale or gift, made within six years prior to the death of the grantor, vendor or donor, of a material part of his estate, or in the nature of a final disposition or distribution thereof, and without an adequate valuable consideration, shall be construed to have been made in contemplation of death within the meaning of this section.* [Italics supplied.]

These provisions were taken from section 1, ch. 44, Laws of 1903, except that the last sentence of subdivision 3 was added by ch. 643, Laws of 1913.

It was contended before the Supreme Court of the United States that, as construed and applied by the State, the quoted tax provisions deprived plaintiffs of property without due process of law, denied them equal protection of the laws, and conflicted with the Fourteenth Amendment. Mr. Justice McReynolds, who delivered the opinion of the court, reached the conclusion that the provision was wholly arbitrary and violated the rights guaranteed by the Fourteenth Amendment. We quote from the opinion as follows:

No question is made of the state's power to tax gifts actually made in anticipation of death, as though the property passed by will or descent; nor is there denial of the power of the state to tax gifts inter vivos when not arbitrarily exerted.

The challenged enactment plainly undertakes to raise a conclusive presumption that all material gifts within six years of death were made in anticipation of it and to lay a graduated inheritance tax upon them without regard to the actual intent. The presumption is declared to be conclusive and cannot be overcome by evidence. It is no mere prima facie presumption of fact.

The court below declared that a tax on gifts inter vivos only could not be so laid as to hit those made within six years of the donor's death and exempt all others—this would be "wholly arbitrary". We agree with this view and are of opinion that such a classification would be in plain conflict with the Fourteenth Amendment. The legislative action here challenged is no less arbitrary. Gifts inter vivos within six years of death, but in fact made without contemplation thereof, are first conclusively presumed to have been so made without regard to actualities, while like gifts at other times are not thus treated. There is no adequate basis for this distinction. Secondly, they are subjected to graduated taxes which could not properly be laid on all gifts or, indeed, upon any gift without testamentary character.

The presumption and consequent taxation are defended upon the theory that, exercising judgment and discretion, the Legislature found them necessary in order to prevent evasion of inheritance taxes. That is to say, A may be required to submit to an exactment forbidden by the Constitution if this seems necessary in order to enable the state readily to collect lawful charges against

B. Rights guaranteed by the federal constitution are not to be so lightly treated; they are superior to this supposed necessity. The state is forbidden to deny due process of law or the equal protection of the laws for any purpose whatsoever.

No new doctrine was announced in *Stebbins* v. *Riley*, 45 S. Ct. 424, 268 U. S. 137, 69 L. Ed. 884, cited by defendant in error. A classification for purposes of taxation must rest on some reasonable distinction. A forbidden tax cannot be enforced in order to facilitate the collection of one properly laid. *Mobile, etc. R. R.* v. *Turnipseed*, 31 S. Ct. 136, 219 U. S. 35, 43, 55 L. Ed. 78, 32 L. R. A. (N. S.) 226, Ann. Cas. 1912A, 463, discusses the doctrine of presumption.

We understand the majority opinion to hold that the State can not legislate a fact which will bring into the taxable class of gifts *inter vivos*, namely, those made in contemplation of death, gifts which were not testamentary in character; that such presumption and consequent taxation operate to deny due process of law. Further, that it is wholly arbitrary to classify gifts made within six years of death, but not made in contemplation of death, as gifts made in contemplation of death, while like gifts at other times are not so classified, there being no adequate basis for this distinction.

It was suggested in the dissenting opinion of Mr. Justice Holmes that if the time had been six months instead of six years the power of the State to pass the law would not have been denied as the difficulty of proof would warrant making the presumption absolute. He further said:

\* \* \* Of course many gifts will be hit by the tax that were made with no contemplation of death. But the law allows a penumbra to be embraced that goes beyond the outline of its object in order that the object may be secured. A typical instance is the prohibition of the sale of unintoxicating malt liquors in order to make effective a prohibition of the sale of beer. The power " is not to be denied simply because some innocent articles or transactions may be found within the proscribed class." *Purity Extract & Tonic Co.* v. *Lynch*, 33 S. Ct. 44, 226 U. S. 192, 201, 204, 57 L. Ed. 184; *Jacob Ruppert* v. *Caffey*, 40 S. Ct. 141, 251 U. S. 264, 283, 64 L. Ed. 260.

We find nothing in the majority opinion which indicates that the length of time between the making of the gift and the death of the donor had any bearing on the conclusion reached and the principles enunciated. As we read the opinion, it recognizes the principle that the law allows a penumbra to be embraced that goes beyond the outline of its object in order that the object may be secured when it treats gifts *inter vivos*, but made in contemplation of death, as transfers having testamentary character, and therefore having a reasonable relation to transfers at death. We further understand the opinion to hold that when a gift *inter vivos* is not in contemplation of death it is without the penumbra which the law may embrace, for it is not testamentary in nature and has no reasonable relation to

transfers at death. To fix an arbitrary limit of time, whether it be six months or six years, within which the gift will be conclusively presumed to have been made in contemplation of death, is to legislate the donor's motive, to fix a fact by legislative fiat, and this, as we understand the majority opinion, is held to deny due process of law.

The Revenue Act of 1926 was enacted on February 26, 1926. The Supreme Court rendered its opinion in the *Schlesinger* case on March 1, 1926, so that Congress did not have the benefit of the court's decision when it adopted the conclusive presumption provision. The Wisconsin Supreme Court had in many cases upheld the constitutionality of the provision.

Since the hearing of the instant case, the constitutionality of the conclusive presumption provision of section 302 (c) of the Revenue Act of 1926 has been raised in four cases in the District Courts and in each case the court held that provision unconstitutional, on the authority of the *Schlesinger* decision.

In the opinion rendered in *Hall* v. *White, Collector*, 48 Fed. (2d) 1060, by Judge Morton, on April 6, 1931, overruling the demurrer by the Government, it was held:

> In my opinion, the case is controlled by *Schlesinger et al., Executors*, vs. *Wisconsin*, 279 U. S. 230. The only distinction between that case and this one is that there the statutory period was six years, while here it is two years. As I understand the majority opinion, this difference is not significant, the principle being that it is arbitrary and unreasonable to tax a person or an estate on a state of facts which do not exist and which the person taxed is not permitted to show do not exist. "Mere legislative fiat may not take the place of fact in the determination of issues involving life, liberty or property." *Butler J. Manley* vs. *Georgia*, 279 U. S. 1.

In the Western District of Pennsylvania, where the identical question was also raised on defendant's demurrer in *Donnan* v. *Heiner*, the court held in the opinion rendered on April 8, 1931, that the matter was controlled by the *Schlesinger* case and overruled the demurrer.

Again, in *Guinzburg* v. *Anderson, Collector*, 51 Fed. (2d) 592, the Government sought to have the complaint dismissed for insufficiency in law, relying upon two main contentions: (a) That the tax should be sustained as an *inter vivos* gift tax, or, in the alternative, (b) as a necessary provision to prevent tax evasion. *Coxe, D. J.*, in his opinion successively dealt with these two arguments:

> The Government's argument that the tax can be sustained as an *inter vivos* gift tax, under the authority of *Bromley* v. *McCaughn*, 280 U. S. 124, is not only not borne out by the language of the section but is thoroughly unsound. Under the Statute (a) the gift is included in the estate at the value at the date of death irrespective of the value at the time of receipt; (b) the amount of the tax is not based on the gift itself but on the value of the entire net estate; and (c)

the tax falls upon the interest of the beneficiaries of the estate, and not upon the donee, unless the estate is inadequate. I do not think, therefore, there is any possible justification for upholding the tax as a gift tax. * * * Furthermore, much the same contention as urged by the Government in the present case was made in the *Schlesinger* case, and rejected by the Wisconsin Supreme Court even before the case reached the Supreme Court of the United States. (*Schlesinger* v. *Wisconsin*, 270 U. S. 230, 238, 239.)

The tax, must, therefore, be sustained, if at all, as a necessary adjunct of the taxing power in order to prevent tax evasion. But that point was squarely met and decided adversely to the Government's contention in the *Schlesinger* case with respect to the Wisconsin statute, which was substantially the same as the Federal statute involved in this case. (*Schlesinger* v. *Wisconsin, supra.*) And the two cases are not to be distinguished on the ground of substantial difference between the Fifth and Fourteenth Amendments. (*Coolidge* v. *Long*, 282 U. S. 582). * * * I can not see, either, that it makes any difference that the prescribed period in this case is two years whereas the statutory period in the *Schlesinger* case was six years. In either event, the period is purely arbitrary, and the gift is taxed without regard to the facts, or the actual intent. * * *

The fourth and last case, *Delaware Trust Co.* v. *Handy, Collector*, 51 Fed. (2d) 867, was decided by the District Court for Delaware on August 28, 1931, the plaintiff seeking, in that case, to recover taxes paid. The issue was raised on a special demurrer. The court overruled the Government's demurrer, stating that it " fully concurred in reasoning and conclusions " expressed by the several District Courts in the three cases above mentioned.

We must examine the nature of the Federal estate tax and its scope, and the taxing power of Congress under the Constitution, and give consideration to the limitations imposed thereon by the Fifth Amendment, with respect to individual rights and property, before adopting as truly analagous a principle which as enunciated obtains only in the relation of a State and its taxing power to the Federal Constitution and the limitations of the Fourteenth Amendment.

The Federal statute which contains the challenged provision is Title III—Estate Tax, of the Revenue Act of 1926, section 301 (a) of which provides:

In lieu of the tax imposed by Title III of the Revenue Act of 1924, a tax * * * is hereby imposed upon the transfer of the net estate of every decedent dying after the enactment of this act * * *.

Two taxes were imposed by Title III of the Revenue Act of 1924— an estate tax by Part I of that Title, and a gift tax by Part II.

Section 1200 of the Revenue Act of 1926 provides:

(a) The following parts of the Revenue Act of 1924 are repealed, to take effect (except as otherwise provided in this Act) upon the enactment of this Act, subject to the limitations provided in subdivision (b):

    *          *          *          *          *          *          *

Part I of Title III (called " Estate Tax ") ;

Part II of Title III (called " Gift Tax ") as of January 1, 1926;

    *          *          *          *          *          *          *

(b) * * * In the case of any tax imposed by any part of the Revenue Act of 1924 repealed by this Act, if there is a tax imposed by this Act in lieu thereof, the provision imposing such tax shall remain in force until the corresponding tax under this Act takes effect under the provisions of this Act.

The gift tax was repealed as of January 1, 1926, and no correspond-- ing tax was imposed by the 1926 Act. In view of the above provisions, we must conclude that the tax imposed by Title III of the 1926 Act is an estate tax and not a gift tax, notwithstanding the fact that it is in lieu of the tax imposed by Title III of the 1924 Act, which imposed both an estate tax and a gift tax.

The language used in the first revenue act imposing an estate tax, the Revenue Act of 1916, and in all subsequent estate-tax laws, is identical with the language quoted from section 301(a) above: "* * * a tax * * * is hereby imposed upon the transfer of the net estate of every decedent dying after the enactment [passage] of this Act."

All the revenue acts imposing estate taxes have also contained a provision under which the value of transfers made before, but in contemplation of, death are required to be included in the gross estate, for the purpose of computing the net estate subject to the tax. The constitutionality of the Federal taxation of gifts made in contemplation of death was directly passed upon and upheld as to all such gifts made after the passage of the Revenue Act of 1916, the first Federal act imposing an estate tax, in *Milliken* v. *United States*, 283 U. S. 15, decided March 2, 1931. In considering the nature of the tax and of gifts made in contemplation of death, Mr. Justice Stone, who rendered the opinion, refers to the adoption by the Federal Government of the system of taxation of transfers of property at death in force in the States, as follows:

* * * When the gift was made it was subject to the provisions of the 1916 Revenue Act. By it, Congress had adopted the well understood system of taxation of transfers of property at death, already in force in forty-two states. Report No. 793, Senate Committee on Finance; Report No. 922, House Committee on Ways and Means, both on H. R. No. 16763, Sixty-fourth Congress. A characteristic feature of the system was that incorporated in sections 202(b) of the 1916 Act and 402(c) of the 1918 Act, both of which imposed a tax on gifts made in contemplation of death, computed at the same value and rate as though the property given had been a part of the donor's estate passing at death.

In terms the tax is imposed on transfers at death, but in its scope it is also a tax imposed on transfers made in contemplation of death and in both cases is measured by the value at death of the interest transferred. *Reinecke* v. *Northern Trust Co.*, 278 U. S. 339.

The purpose of Congress in incorporating the challenged provision in the Revenue Act of 1926 is shown by the House Report on the

bill (Rept. No. 1, 69th Cong., 1st sess.), in the paragraph which appears at page 15:

Under all the prior revenue acts, a gift or transfer of property by trust or otherwise without a fair consideration and within two years prior to the decedent's death is, unless shown to the contrary, deemed to be made in contemplation of death, and the amount of the gift or transfer is included in the gross estate of the decedent. The presumption, however, is rebuttable and has proved very ineffective in practical administration. The difficulty of enforcement will be even more serious in view of the repeal of the gift tax. For this reason, subdivision (c) has been amended so that all such transfers made within two years of the decedent's death without a fair consideration will be included in the gross estate regardless of whether or not they are made in contemplation of death. Experience under the act of 1921 showed that the honest and scrupulous citizen paid the tax, but many less scrupulous found an easy way of evading it. This not only caused great loss in revenue to the Government, but was grossly unfair to those who paid the tax in good faith. The inclusion of this provision will prevent most of the evasion, and is the only way in which it can be prevented.

The Senate recommended the repeal of the estate tax.

The legislative intent, as revealed in the clear language of the statute and as shown by the above report, was to tax as part of decedent's estate all gifts made after the enactment of the Act and within two years prior to death, regardless of motive and to accomplish this by the conclusive presumption that all gifts within such period were made in contemplation of death.

The statute, in the first sentence of section 302 (c)—

To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of * * * his death,—

embraces all gifts made in contemplation of death, no matter when made. Therefore, gifts made after the enactment of the 1926 Act, in contemplation of death and within two years prior to death, as well as such gifts made at other times, are included in the first provision of subsection (c), and are includable in gross estate by virtue of that provision alone.

In *Milliken* v. *United States*, *supra*, Mr. Justice Stone spoke of the gift made in contemplation of death after the 1916 Act was passed, as "subject to the excise when made." We quote from the opinion as follows:

* * * Underlying the present statute is the policy of taxing such gifts equally with testamentary dispositions, for which they may be substituted, and the prevention of the evasion of estate taxes by gifts made before, but in contemplation of death. It is thus an enactment in aid of, and an integral part of, the legislative scheme of taxation of transfers at death. Decedent's gift as a substitute for a testamentary disposition was thus brought within the operation of the 1916 Act taxing such gifts on the same basis, with respect to rate and valuation, as transfers of property at death. Not only was the

decedent left in no uncertainty that the gift he was then making was subject to the provisions of the existing statute, but in view of its well understood purpose he should be regarded as taking his chances of any increase in the tax burden which might result from carrying out the established policy of taxation under which substitutes for testamentary gifts were classed and taxed with them.

* * * The present gift was subject to the excise when made; and for reasons already indicated, we think a mere increase in the tax, pursuant to a policy of which the donor was forewarned at the time he elected to exercise the privilege, did not change its character. * * *

A gift actually made in contemplation of death after the passage of the 1926 Act, is, therefore, subject to the excise when made, under the first sentence of subdivision (c) of section 302 of the Act.

We think it pertinent here to inquire whether a gift *inter vivos*, made after the enactment of the Revenue Act of 1926, not in contemplation of death, is subject to the excise when made, but liable to be defeated if the donor lives longer than two years from the date of the gift; or whether the gift is free from tax when made, but brought into the scope of the tax by the death of the donor within two years.

The tax imposed is an estate tax. There was no gift tax in force when the gift was made. No one could then tell whether it would ever be subjected to tax. The gift was not a substitute for a testamentary disposition. The event which would bring it into the taxable class had not then taken place and the donor had no control over such event. We think the answer to the question is found in the following paragraph from *Reinecke* v. *Northern Trust Co., supra:*

In its plan and scope the tax is one imposed on transfers at death or made in contemplation of death and is measured by the value at death of the interest which is transferred. * * * It is not a gift tax and the tax on gifts once imposed by the Revenue Act of 1924, c. 234, 43 Stat. 313, has been repealed, 44 Stat. 126. One may freely give his property to another by absolute gift without subjecting himself or his estate to a tax, but we are asked to say that this statute means that he may not make a gift inter vivos, equally absolute and complete, without subjecting it to a tax if the gift takes the form of a life estate in one with remainder over to another at or after the donor's death. It would require plain and compelling language to justify so incongruous a result and we think it is wanting in the present statute.

While the statute before the court in the above case was the estate tax title of the 1921 Revenue Act, the language of the court is plainly applicable to the plan and scope of all the estate tax acts, including the Revenue Act of 1926, because specific reference is made to the repeal of the gift tax, which was done by the 1926 Act. This being true, we think the statement, " One may freely give his property to another by absolute gift without subjecting himself or his estate to a tax," is equally true under the 1926 Act. The conclusive presumption which brings the gift within the statute springs from the death

of the donor within two years after making the gift, not from the motive which was in the mind of the donor at the time of the gift.

We conclude, therefore, that gifts *inter vivos* made after the passage of the Revenue Act of 1926, which spring from a motive other than contemplation of death, are not subject to the estate tax when made and are only brought into the scope of the tax by the death of the donor within two years. In other words, the transfer of property by gift after the enactment of the Revenue Act of 1926, which springs from a motive other than contemplation of death, is not a taxable act.

Contemplation of death, within the meaning of the statute, as defined in *United States* v. *Wells, supra*, is that the dominant motive in the mind of the donor when the gift was made was the thought of death. This is a fact which necessarily existed at that time and no subsequent event can change this fact. The effect of the statute is to make a transfer, nontaxable when made, taxable in case the donor dies within less than two years from the transfer. The time when this event will occur is a matter over which the donor has no control.

It seems to us that what was said by Judge Hough in *Frew* v. *Bowers*, 12 Fed. (2d) 625, is particularly appropriate here:

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

But, if the technical construction is wrong, then we must face the question whether it is within the power of Congress to do what has been done; i. e., use the property of A as a measure for the tax to be laid upon B. Thus stated, it would seem impossible to support the tax; attack must be on the form of statement. We have at great length examined the assemblage of phenomena that make up this case, in order to ascertain what they amount to; and we think the foregoing an accurate statement of what the tax at bar really is.

If that description be accepted, while there is no classification of taxpayers, the tax itself is "arbitrary and capricious." *Barclay* v. *Edwards*, 267 U. S. 442, 450, 45 S. Ct. 135, 348 (69 L. Ed. 703). Further, a tax on a transfer by A, but measured by anything other than the estate of A, may be a duty or excise in form, but it is a palpable effort to tax something other than the transfer. In this case the effort is to tax in 1922 in respect of something untaxable in 1910. Cf. *Lewellyn* v. *Frick*, 268 U. S. 238 at 251, 45 S. Ct. 487, 69 L. Ed. 934.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

\*　\*　\* We think this an effort to use a constitutional power as a hook on which to hang a cloak that conceals unconstitutional action.

The statute involved in *Frew* v. *Bowers, supra*, was section 402(c) of the 1921 Act. The corresponding section of the 1918 Act was before the Supreme Court in *Nichols* v. *Coolidge*, 274 U. S. 531. In the *Coolidge* case, the Supreme Court said:

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

The statute requires the executors to pay an excise ostensibly laid upon transfer of property by death from Mrs. Coolidge to them but reckoned upon

its value plus the value of other property conveyed before the enactment in entire good faith and without contemplation of death. Is the statute, thus construed, within the power of Congress?

Undoubtedly, Congress may require that property subsequently transferred in contemplation of death be treated as part of the estate for purposes of taxation. This is necessary to prevent evasion and give practical effect to the exercise of admitted power, but the right is limited by the necessity.

Under the theory advanced for the United States, the arbitrary, whimsical and burdensome character of the challenged tax is plain enough. An excise is proscribed, but the amount of it is made to depend upon past lawful transactions, not testamentary in character and beyond recall.

*     *     *     *     *     *     *

In the instant case, an excise is prescribed, but the amount of it is made to depend upon past lawful transactions not testamentary in character and beyond recall. Whether the transfer will ever be taxed is, as Judge Hand said in his concurring opinion in *Frew* v. *Bowers, supra,*

\* \* \* fixed by the mere sport of fortune. It has no more relation to the possessions or conduct of the taxpayer than if he were taxed upon the subsequent value of property he had sold outright, or his estate was doubled because he died on Wednesday. Such a law is far more capricious than merely retroactive taxes. Those do indeed impose unexpected burdens, but at least they distribute them in accordance with the taxpayer's wealth. But this section distributes them in accordance with another's wealth; that is a far more grievous injustice.

If it were not for the fact that the transfers before the court in the *Coolidge* case and in *Frew* v. *Bowers*, were made before any estate-tax act was enacted, we might well consider the general language used in the extracts quoted above as controlling in the present case and rest our decision thereon, but as the conclusive presumption applies only to gifts made after the enactment of the 1926 Act, it is necessary, we think, to consider the question of the power of Congress to go as far as it has in the conclusive presumption provision, in order to prevent evasion of estate taxes. No new classification is attempted, but gifts not within the taxable class are brought within the taxable class by means of the conclusive presumption.

Let us consider the provision in the light of the doctrine of presumption announced by the Supreme Court. In *Mobile, etc. R. R.* v. *Turnipseed*, 219 U. S. 35, cited in the *Schlesinger* case as discussing this doctrine, the court said, at page 43:

Legislation providing that proof of one fact shall constitute *prima facie* evidence of the main fact in issue is but to enact a rule of evidence, and quite within the general power of government. Statutes, National and State, dealing with such methods of proof in both civil and criminal cases abound, and the decisions upholding them are numerous. \* \* \*

*     *     *     *     *     *     *

That a legislative presumption of one fact from evidence of another may not constitute a denial of due process of law or a denial of the equal protection

of the law it is only essential that there shall be some rational connection between the fact proved and the ultimate fact presumed, and that the inference of one fact from proof of another shall not be so unreasonable as to be a purely arbitrary mandate. So, also, it must not, under guise of regulating the presentation of evidence, operate to preclude the party from the right to present his defense to the main fact thus presumed.

If a legislative provision not unreasonable in itself prescribing a rule of evidence, in either criminal or civil cases, does not shut out from the party affected a reasonable opportunity to submit to the jury in his defense all of the facts bearing upon the issue, there is no ground for holding that due process of law has been denied him.

A later case which also discusses the doctrine of presumption is *Manley* v. *Georgia*, 279 U. S. 1, which was cited by Judge Morton in his opinion in the *Hall* case. In the *Manley* case, the court said:

State legislation declaring that proof of one fact or a group of facts shall constitute prima facie evidence of the main or ultimate fact in issue is valid if there is a rational connection between what is proved and what is to be inferred. If the presumption is not unreasonable and is not made conclusive of the rights of the person against whom raised, it does not constitute a denial of due process of law. *Mobile, etc. R. R.* v. *Turnipseed*, 219 U. S. 35, 43. A prima facie presumption casts upon the person against whom it is applied the duty of going forward with his evidence on the particular point to which the presumption relates. A statute creating a presumption that is arbitrary or that operates to deny a fair opportunity to repel it violates the due process clause of the Fourteenth Amendment. *Bailey* v. *Alabama*, 219 U. S. 219, 233, et seq. Mere legislative fiat may not take the place of fact in the determination of issues involving life, liberty or property. * * *

The challenged provision in the statute before us operates to preclude the party from the right to present his defense to the main fact presumed, namely, that the gift was made in contemplation of death. The issue involves property. The provision in question contains a legislative fiat which is to take the place of fact. On the authority of these decisions, the challenged provision would seem to be in violation of the rights guaranteed by the Fifth Amendment. But is the power of taxation such a fundamental and imperious necessity that it is superior to these rights?

The Supreme Court has recognized that a statute purporting to tax may be so arbitrary and capricious as to amount to confiscation and offend the Fifth Amendment. *Brushaber* v. *Union Pacific R. R. Co.*, 240 U. S. 1; *Barclay & Co.* v. *Edwards*, 267 U. S. 442, 450; 45 Sup. Ct. 135, 348; 69 L. Ed. 703; *Nichols* v. *Coolidge, supra.*

Attention is here called to the fact that the presumption applies only to the excess over $5,000 of gifts made after the 1926 Act but within two years prior to decedent's death. We thus have a situation of a gift *inter vivos*, not made in contemplation of death, split into two parts, one of $5,000 and the other of the excess over $5,000.

The presumption applies only to the transfer of the excess. The same gift, therefore, is for the purposes of the tax made from two motives. This seems to us to indicate the arbitrary nature of the provision.

If it be conceded that the aim of the estate-tax title of the 1926 Act is to impose a tax on transfers at death and those made before but in contemplation of death, we think the revenue which the Act is designed to produce is safeguarded by virtue of the rule which makes the determination of the Commissioner that a gift was made in contemplation of death prima facie correct. Whether such determination relates to a gift made within two years of death or more than two years prior to death, the burden of proving that the gift was not made in contemplation of death is wholly on the executor. It is not necessary for the Commissioner to offer proof to support his determination.

In the *Schlesinger* case, the Supreme Court said that a State may not enact a conclusive presumption as to a gift of a material part of decedent's estate made within six years prior to death in order to prevent evasion of inheritance taxes; that the rights guaranteed by the Fourteenth Amendment to the Constitution are superior to the supposed necessity for such legislation.

If the provision of the Wisconsin statute which was before the court in the *Schlesinger* case and the provision of the Federal statute here under consideration are similar in all material respects and there is no discernible difference in the rights guaranteed by the Fifth and Fourteenth Amendments, with their resulting limitations on the taxing power of Congress and of the States, respectively, we may adopt as truly analagous the principle which was enunciated in the *Schlesinger* case.

In *Milliken* v. *United States, supra,* the Supreme Court refers to the enactment of the 1916 Federal estate-tax act as the adoption by Congress of the well understood system of taxation of transfers of property at death which was already in force in forty-two States, a characteristic feature of which was the inclusion of gifts made in contemplation of death, and in the *Wells* case, the court refers to the phrase, " in contemplation of death," which was first used by Congress in the estate-tax title of the Revenue Act of 1916, as " previously found in State statutes."

Both cases, therefore, imply that Congress, in adopting an excise tax upon the transfer of an estate upon the death of the owner, was adopting the system already in force in many States. The parallel of the two systems and of the Supreme Court's treatment of questions arising thereunder is not, of course, capable of indefinite ex-

tension, but the cases certainly justify the view that where the question involved is a statute violative of the rights of due process of law guaranteed alike by the Fourteenth and Fifth Amendments, the Supreme Court has applied the same principles in deciding questions arising under similar provisions in State and Federal statutes imposing death duties, and if the rule was first announced in a case arising under State statutes, it has been followed when a like question has arisen under a Federal statute, and vice versa. Thus, the principle in *Saltonstall* v. *Saltonstall*, 276 U. S. 260, a case arising under the Massachusetts succession-tax law, was followed in *Chase National Bank* v. *United States*, 278 U. S. 327, a case arising under the Federal estate-tax law, and the rule announced in *Nichols* v. *Coolidge*, 274 U. S. 531, under the Federal statute, was followed in *Coolidge* v. *Long*, 282 U. S. 582, under the State statute. Many other cases might be cited, but it is unnecessary to multiply authorities in order to show that the Fifth Amendment is an implied limitation on the Federal taxing power where that sovereign and essential power of Government has been exercised arbitrarily at the expense of individual right.

That the limitations of due process of law imposed on the Federal Government by the Fifth Amendment are similar in all essentials to the limitations of due process and equal protection of the laws imposed by the Constitution on the States by the Fourteenth Amendment, in so far as they affect taxation of transfers of property, is clearly shown in the language of Mr. Justice Stone in *Bromley* v. *McCaughn*, 280 U. S. 124, construing the Federal gift tax:

* * * Graduated taxes on inheritance or successions, with provisions for exemptions, have so often been upheld as not violating either the due process or the equal protection clauses of the Fourteenth Amendment, *Stebbins* v. *Riley*, 268 U. S. 137, 45 S. Ct. 424, 69 L. Ed. 883, 44 A. L. R. 1454, as to leave little ground for supposing that taxation by Congress embracing these features, and otherwise valid, could be deemed a denial of the due process clause of the Fifth. See *Van Oster* v. *Kansas*, 272 U. S. 465, 468, 47 S. Ct. 133, 71 L. Ed. 354, 47 L. Ed. 1044.

A comparison of the Wisconsin statute and the Federal statute shows that the Wisconsin statute imposes an *inheritance tax* on the transfer to any person of property by will or intestate laws and on transfers made in contemplation of death, while the Federal statute imposes an *estate tax* on the transfer of the net estate of every person dying after the passage of the Act, such net estate including not only the estate transferred at death, but also transfers made before but in contemplation of death. Under the decision in *Knowlton* v. *Moore*, 178 U. S. 41, and a long line of subsequent decisions, such taxes are in essence alike, both being excises on the transfer occasioned by death.

In both the Wisconsin statute and the Federal statute only one class of gifts *inter vivos* is taxed—those made in contemplation of death, and both statutes apply to all such gifts made at *any time*.

The conclusive presumption provision of the Wisconsin statute applies only to gifts of a material part of decedent's estate, while the conclusive presumption provision of the Federal statute applies only to the excess over $5,000 of all gifts to any one person. The Wisconsin statute applies to such gifts made within six years prior to death, while the Federal statute applies to such gifts made within two years prior to death. Under both statutes the conclusive presumption applies to gifts not admitted or shown to have been made in contemplation of death and precludes any evidence as to the actualities and requires that the actualities be disregarded.

The gifts in the *Schlesinger* case had all been made long after the challenged provision had been added to the law, and we may assume that the Wisconsin statute applied only to transfers made after the passage of the Act. The challenged provision of the Federal statute applies in terms only to gifts made after the passage of the Act. Both statutes, therefore, apply to gifts made after the enactment of the Act containing the conclusive presumption provision.

The purpose of both provisions is the same, namely, to prevent evasion of death duties. The effect of both statutes is the same, namely, gifts *inter vivos*, not testamentary in character, are subjected to the tax. Both statutes enact a rule of evidence which operates to deny the party the right to present his defense to the main fact presumed.

We think that the only material difference between the challenged provisions of the two statutes is the length of time between the date of the gift and the date of death, which brings the gift into the taxable class. The Supreme Court, in reaching the conclusion that the Wisconsin statute was unconstitutional, apparently did not consider the period of time as significant. The application of the presumption of the Federal statute to only a part of the gift is more arbitrary than the Wisconsin statute.

The principle announced in the *Schlesinger* case was that the conclusive presumption provision of the Wisconsin statute and the consequent tax operated to deny the rights guaranteed by the Fourteenth Amendment. The question in the instant case is whether the conclusive presumption provision of the Federal statute and the consequent tax operate to deny the rights guaranteed by the Fifth Amendment. The limitations of due process of law imposed on the Federal Government by the Fifth Amendment are similar in all essentials to the limitations of due process and equal protection of

the laws imposed on the States by the Fourteenth Amendment. The Supreme Court in determining questions arising under the Federal estate-tax laws has applied the principles earlier announced in decisions involving similar questions arising under state statutes imposing inheritance or succession taxes. The provisions of the Federal statute here in issue are similar, in all respects, to the provisions of the Wisconsin statute before the Supreme Court in the *Schlesinger* case, which the majority opinion appeared to consider significant and on which the decision is grounded.

We conclude, therefore, as did the four District Courts to whom the identical question was submitted, that the question here involved is controlled by the *Schlesinger* case and that we are bound thereby. Accordingly we hold, on the authority of *Schlesinger* v. *Wisconsin, supra,* and of *Hall* v. *White, supra; Donnan* v. *Heiner, supra; Guinzburg* v. *Anderson, supra,* and *Delaware Trust Co.* v. *Handy, supra,* that the conclusive presumption provision of section 302 (c) of the Revenue Act of 1926 is unconstitutional.

In reaching the conclusion that the *Schlesinger* case is controlling here, we are not unmindful of the great weight to be given the presumption of the constitutionality of an Act of Congress, and we appreciate the responsibility that goes with declaring a provision in an Act of Congress unconstitutional on the authority of a decision involving a like provision of a State statute. For the reasons set forth above, we think the question here involved has been fully disposed of by the Supreme Court and the four District Courts in the decisions cited above and that we are bound by them.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

---

STERNHAGEN, dissenting: I think the statutory provision is valid. Moreover, even if I were inclined to think it invalid, the invalidity is not sufficiently free from doubt to require this Board so to decide, bearing in mind that Congressional legislation is not to be set aside unless it is clearly in conflict with the Constitution. While, in my opinion, the inherent functions of the Board include the power to consider the validity of a deficiency determination as well under the Constitution as under the statute, an attack upon the statute must be quite overwhelming to succeed.

Congress, after many years of almost futile effort to prevent escape from estate tax through gifts in contemplation of death, despite the earlier rebuttable presumption, believed the present provision necessary to maintain the effectiveness of the tax. Certainly the preven-

tion of tax evasion is a valid purpose, and the present provision can hardly be said to have no reasonable relation to that purpose or, in the light of experience, to be arbitrary or capricious, however harshly it may operate in a particular case. Since *O'Gorman & Young* v. *Hartford Insurance Co.*, 282 U. S. 251, it may be doubted whether the particular evidence of the way the statute impinges on one case is enough to overcome the presumption of constitutionality. If Congress had chosen to impose an excise directly upon the gift, as it formerly did, the Fifth Amendment would not have prevented, *Bromley* v. *McCaughn*, 280 U. S. 124, and I think the transfer may be taxed by way of calling it testamentary under certain conditions if in common experience the gift and the conditions are known frequently to be related to each other, and the occasion for calling it testamentary is exigent in the enforcement of taxes.

Of course, if what the Supreme Court said in the *Schlesinger* case of the Wisconsin statute was intended to be as broad as it could be interpreted, the prevailing opinion of the Board here is correct. But the Fifth Amendment may not be as restrictive of the Federal taxing power as the Fourteenth is of the States'; the history of Wisconsin's enforcement may not have been as convincing; the six-year presumption may be so remote from ordinary experience as to be arbitrary, while a two-year provision may not be. Thus, the *Schlesinger* case is not compelling until the Supreme Court so decides. Without disrespect for the several District Courts which have held the provision unconstitutional, I think the Board should decide that the statute is not invalid and hold, in accordance therewith, that the gifts in question were made in contemplation of death.

SMITH agrees with this dissent.

---

MURDOCK, dissenting: My reasons for dissenting are much the same as those set forth in greater detail in the above dissent. I confess that it is perhaps difficult to distinguish this case from *Schlesinger* v. *Wisconsin*, 270 U. S. 230, and yet I am not satisfied that the two may not be distinguished. The difference in the length of the period within which affected gifts are made, and the fact that one was a state statute, the other a Federal, may make a difference. I am unwilling to say that by clear and indubitable demonstration the statute is opposed to the Constitution. *Adkins* v. *Children's Hospital*, 261 U. S. 525. Cf. *Rita O'Shaughnessy, Executrix*, 21 B. T. A. 1046.

ARUNDELL agrees with this dissent.