EDWARD E. DENNISTON, EXECUTOR OF THE ESTATE OF ELEANOR H. DENNISTON, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ANNA H. DENNISTON, TRANSFEREE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

THE PENNSYLVANIA COMPANY FOR INSURANCES ON LIVES AND GRANTING ANNUITIES AND JOSEPH S. CLARK, TRUSTEES AND TRANSFEREES, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 86175, 86573, 86579. Promulgated November 1, 1938.

*Murray H. Spahr, Esq.*, and *Joseph S. Clark, Esq.*, for the peti-
tioners.

*E. C. Algire, Esq.*, for the respondent.

OPINION.

BLACK: The Commissioner determined that the value of the property transferred by decedent by the deed of trust of May 12, 1915, as to which the power of appointment was relinquished March 16, 1932, was $316,606.96 at the date of decedent's death and included it as a part of her gross estate. This will sometimes hereinafter be designated as item 1 of the Commissioner's determination. He determined that the value of the property transferred by decedent to her daughter, Anna H. Denniston, by the two deeds dated May 19, 1932, was $55,000 at the date of decedent's death and included it as a part of her gross estate. This will sometimes hereinafter be referred to as item 2 of the Commissioner's determination. Petitioners concede the correctness of these valuations and therefore we have made no findings of fact as to them.

The reasons why the Commissioner included the value of the property above referred to as item 1 in decedent's gross estate are stated in the deficiency notice as follows:

Under the deed of trust created by the decedent on May 12, 1915, the decedent reserved the income for her lifetime. The trust provided that upon decedent's death the trust property should be held "for such parties and persons and for such uses, intents and purposes and estates therein as the said Eleanor H. Denniston at the time of her death may by any last will and testament or instrument in the nature thereof direct, provide, limit and appoint."

As the decedent retained a life estate and the right to dispose of the remainder by deed or will, no gift or transfer of any vested interest was accomplished by the deed of May 10, 1915. The transfer of the remainder was completed on March 16, 1932, the date the decedent relinquished the right to dispose of the property by her will. Accordingly, as the transfer was actually made on March 16, 1932, and the decedent retained the income to the date of her death, the transfer comes within the provision of Section 302 (c) of the Revenue Act of 1926, as amended by joint resolution of March 3, 1931, as amended by Section 803 of the Revenue Act of 1932.

Where the grantor of a trust reserves the power to dispose of the trust corpus by will, the trust is subject to a power to alter, amend, or revoke within the meaning of Section 302 (d) of the Revenue Act of 1926. *Commissioner* v. *Chase National Bank, Administrator of estate of Vivien Helen De LaPoer Beresford, deceased,* U. S. C. C. A. (2d) Cir. March 2, 1936. The relinquishment by the decedent on March 16, 1932, of the power to dispose of the trust property by her will is held to have been made in contemplation of death, and the value of the trust property is included in the gross estate under the provisions of Section 302 (d) of the Revenue Act of 1926.

The sole reason why the Commissioner included item 2 in decedent's gross estate, as stated in the deficiency notice, is because he determined that the conveyances were made in contemplation of death. There was no reservation of income for life by decedent as to the real estate properties in item 2 and the Commissioner does not

contend that as to them the joint resolution of March 3, 1931, and section 803 of the Revenue Act of 1932 apply.

Therefore, as to both items 1 and 2 which were included in decedent's gross estate, we have the common issue of contemplation of death. As to the value of the property included in item 1, we have the additional question as to whether the joint resolution of March 3, 1931, and section 803 of the Revenue Act of 1932, are applicable.

If the relinquishment of the power of appointment and the two conveyances by deed were all executed in contemplation of death, then it becomes unnecessary to decide whether the joint resolution of March 3, 1931, and section 803 of the Revenue Act of 1932 are applicable to the relinquishment of the power of appointment executed March 16, 1932. We shall therefore take up first and decide the issue as to contemplation of death.

The petitioners argue in their brief that under the language of the revenue acts in force at the time of decedent's death there is no statutory presumption that decedent executed the documents in question in contemplation of death, notwithstanding they were executed less than two years prior to her death. We shall, for the purposes of this opinion, assume petitioners are correct in that contention. Respondent does not argue to the contrary in his brief. We have not reached the conclusion on this issue, which we shall hereinafter state, because of any statutory presumption. We have reached it from a consideration of all the facts in evidence.

We may remark however that, assuming that there is no statutory presumption that the conveyances were executed in contemplation of death because of the fact that they were executed less than two years prior to decedent's death, and it is certain that there is no conclusive statutory presumption to that effect, cf. *Heiner* v. *Donnan*, 285 U. S. 312, nevertheless the determination of the Commissioner in his deficiency notice that the relinquishment of the power of appointment and the two conveyances by deed were each made in contemplation of death is prima facie correct. That is so because of the general presumption of law which supports the correctness of the Commissioner's determination and requires evidence to overcome it. See *American Security & Trust Co., et al., Executors*, 24 B. T. A. 334.

The burden of proof is therefore on the petitioners in the instant case to overcome the correctness of the Commissioner's determination. For reasons which we shall presently state, we do not think they have done so.

The same evidence in the record applies to both items 1 and 2 on this issue of contemplation of death. If the relinquishment of the power of appointment was executed in contemplation of death, the value of the property in item 1 is includable in decedent's gross estate

by reason of section 302 (d) of the Revenue Act of 1926, printed in the margin.[1]

If the gift of the property conveyed by the two deeds to Anna H. Denniston dated May 19, 1932, were made in contemplation of death, then the value of the property in item 2 would be includable in decedent's gross estate under section 302(a) and (c) of the Revenue Act of 1926, as amended by the joint resolution of March 3, 1931, printed in the margin.[2]

The language italicized in section 302(c), as printed in the margin, was added by the joint resolution of March 3, 1931, and, while that language was in full force and effect at the time of the conveyances in question, nevertheless it is plain that it has no application to the real estate conveyed by the deeds of May 19, 1932, because those deeds did not reserve any interest to the decedent. The remainder of section 302(c) does apply if these conveyances were made by decedent in contemplation of death.

Were the relinquishment of the power of appointment executed March 16, 1932, and the deeds of conveyance of the real estate made May 19, 1932, executed in contemplation of death? The leading case on the meaning of the phrase "in contemplation of death" is *United States* v. *Wells*, 283 U. S. 102, wherein the Supreme Court, in speaking of that phrase, said: "The provision is not confined to gifts causa mortis, which are made in anticipation of impending death, are revocable, and are defeated if the donor survives the apprehended peril."

If the provision was so narrowly confined, then it would be clear that the conveyances here involved were not made by decedent in contemplation of death. The evidence shows that she was in a rea-

---

[1](d) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth.

[2] The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

(a) To the extent of the interest therein of the decedent at the time of his death:

\* \* \* \* \* \* \*

(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, *including a transfer under which the transferor has retained for his life or any period not ending before his death (1) the possession or enjoyment of, or the income from, the property or (2) the right to designate the persons who shall possess or enjoy the property or the income therefrom;* except in case of a bona fide sale for an adequate and full consideration in money or money's worth. \* \* \* Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death, but prior to the enactment of this act, without such a consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title. [Italics ours.]

sonable degree of good health when she made them and that no fear of early and impending death influenced her. True the decedent was about 75 years of age when she made the conveyances and was not as active as in her younger years, but she was of an optimistic, hopeful frame of mind and her health was as good as could have been expected for one of her years. Perhaps better than the average of that age.

However, as pointed out by the Supreme Court in the *Wells* case, the transfer does not have to be made in contemplation of impending death to fall within the ambit of the statute. If the motive of the transfer is testamentary in character, that brings it within the statute. The Supreme Court in the *Wells* case used the language "dominant motive" when discussing the motives which lead up to transfer.

However the Second Circuit, in the recent case of *Farmers Loan & Trust Co.* v. *Bowers*, 98 Fed. (2d) 794, held that where there was an important and substantial death motive such as the avoidance of estate taxes, the provision "in contemplation of death" applies. The court, in discussing the words "dominant motive" as used by the Supreme Court in the *Wells* case, among other things, said:

We cannot believe that the general reasoning of the opinion should be taken to exempt gifts *inter vivos* from taxation where there is an important death motive such as the avoidance of estate taxes. Judge Soper, discussing *United States* v. *Wells* in *Tait* v. *Safe Deposit & Trust Co. of Baltimore*, 74 F. (2) 851, (CCA 4) (35-1 USTC, par. 9058), pertinently remarked that:

"* * * a transfer is taxable * * * if the purposes associated with death enter into and form a substantial although a less compelling part of the inducing motives. Apart from the difficulty of appraising the relative value and effect of concurring motives, such a transfer falls within the language of the estate tax act and within the purpose it was designated to meet."

In the instant case it seems reasonably clear from the evidence that one of the dominant and controlling motives which actuated decedent in executing the relinquishment of the general power of appointment which was reserved in the trust indenture of May 12, 1915, was that her estate after her death would not have to pay the estate tax which would be levied if the power of appointment were outstanding at the time of her death.

Likewise, it seems reasonably clear from the evidence that one of the dominant and controlling motives for the conveyances of the real estate by decedent to her daughter, Anna H. Denniston, by deeds dated May 19, 1932, was to escape estate taxes which would result if ownership of the property were in decedent at the time of her death. A strong circumstance to support this view, we think, is that the two conveyances of real estate of May 19, 1932, divested Mrs. Denniston of all the property which she owned, including the home in which she lived and her summer home in Maine, except her life

interest in the income from the property conveyed by the deed of trust of May 10, 1915. We think it is reasonable to say that parents do not usually give all their property to their children, including the home that shelters them, unless there is some kind of a testamentary motive in mind.

There were doubtless, as petitioners argue, other motives which entered into these transfers. For example, it seems reasonably clear from the evidence that the escaping of a prospective gift tax entered into decedent's decision to relinquish the power of appointment and to make the conveyances of the real estate to her daughter on the dates the instruments were executed. There was no gift tax in force at the time of the several conveyances, but one was being talked of in Congress and the press at that time and the evidence establishes to our satisfaction that one of the things under consideration by decedent when she executed the relinquishment of the power of appointment, March 16, 1932, and the conveyances of the real estate, May 19, 1932, was the prospective gift tax which was imposed by the Revenue Act of 1932, which became effective June 6, 1932.

While we think it is correct to hold on the evidence that the motive to escape the imposition of a prospective gift tax was an important factor in moving decedent to make these conveyances, nevertheless, as already stated, we must hold from the evidence that one of the dominant and controlling motives which influenced decedent to execute the conveyances was to avoid estate taxes.

We think there would be no profit in discussing in detail the testimony of the several witnesses who testified at the hearing. Much of their testimony is directed to the fact that Mrs. Denniston was a healthy woman all of her lifetime, with a hopeful and optimistic outlook on life, until within a few weeks of her death, that she was in good health for one of her age at the time she executed the conveyances in question and was not in fear of early death at the time she executed them, and that she had made up her mind that she wanted to complete in her lifetime gifts to her children of all her property, except the life estate in the income from the property which had been transferred by trust indenture on May 19, 1915. All this we accept as true.

It is also shown, however, by petitioners' own witnesses that, while Mrs. Denniston was in good health at the time she discussed with her lawyers the question of relinquishing the power of appointment and executing the deeds of conveyance of the real estate to her daughter, the burden of the discussion centered around the saving of estate taxes and the avoidance of prospective gift taxes. Most of the discussion with her lawyers seems to have been carried on in Mrs. Denniston's behalf by her two sons-in-law; nevertheless, they

appear to have been acting in her behalf and she was fully cognizant of what was going on and the motives for executing the conveyances were hers. One of the dominant and controlling motives being the avoidance of estate taxes, it must be held, on the authority of *United States* v. *Wells, supra*, and *Farmers Loan & Trust Co.* v. *Bowers, supra*, that the relinquishment of the power of appointment executed March 16, 1932, and the conveyances of real estate made May 19, 1932, were executed by decedent in contemplation of death.

On this issue the Commissioner is sustained.

The transferee petitioners under Docket Nos. 86573 and 86579 admit liability as transferees for whatever deficiency, if any, the Board may find to be due in Docket No. 86175, plus interest as provided by law.

Inasmuch as we have sustained the Commissioner on the issue respecting "in contemplation of death" and the inclusion in decedent's gross estate of both items 1 and 2, and inasmuch as there is no dispute as to values,

> *Decision will be entered in Docket No. 86175 that there is a deficiency in estate tax in the amount of $25,005.02. In Docket Nos. 86573 and 86579 decision will be entered in each proceeding that the petitioner therein is liable for the full amount of the deficiency determined in Docket No. 86175 plus interest as provided by law.*

Reviewed by the Board.