BROMLEY *v.* McCAUGHN, COLLECTOR OF INTERNAL REVENUE.

No. 27. Argued October 31, 1929.—Decided November 25, 1929.

. *Mr. Ira Jewell Williams*, with whom *Messrs. Ira Jewell Williams, Jr.*, and *Francis Shunk Brown* were on the brief, for Bromley.

126

128

130

*Solicitor General Hughes,* with whom *Messrs. Sewall Key* and *J. Louis Monarch,* Special Assistants to the Attorney General, were on the brief, for McCaughn.

132

Mr. Justice Stone delivered the opinion of the Court.

In this case, pending in the Court of Appeals for the Third Circuit, that court has certified to this questions of law concerning which it asks instructions for the proper disposition of the cause. Judicial Code, § 239, as amended by Act of February 13, 1925.

Bromley, a resident of the United States, brought the present suit in the District Court for Eastern Pennsylvania, to recover a tax alleged to have been illegally exacted, upon gifts made by him after the effective date of § 319 of the Revenue Act of 1924 (43 Stat. 253, 313,

as amended by § 324 (a) of the Revenue Act of 1926, 44 Stat. 9, 86). This section imposes a graduated tax " upon the transfer by a resident by gift " during the calendar year " of any property wherever situated . . ." In computing the amount of the gift subject to the tax, § 321, in the case of a resident, exempts gifts aggregating $50,000, gifts to any one person which do not exceed $500, and certain gifts for religious, charitable, educational, scientific and like purposes. The questions certified are:

1. Are the provisions of Sections 319–324 of the Revenue Act of 1924, as amended by Section 324 of the Revenue Act of 1926, when applied to transfers of property by gift inter vivos, made after the effective dates of the cited Revenue Acts and not made in contemplation of death, invalid, because they violate (a) the third clause of Section 2 and (b) the fourth clause of Section 9 of Article 1 of the Constitution in that the tax they impose is a direct tax and has not been apportioned?

2. Are the cited provisions, when applied to transfers of property made in like circumstances, invalid because they violate (a) the Fifth Amendment to the Constitution and (b) the first clause of Section 8 of Article 1 of the Constitution in that they impose a tax which is graduated and subject to exemptions and therefore lacks uniformity, and also deprive a person of his property without due process of law?

1. The first question was mooted by counsel, but not decided, in *Blodgett* v. *Holden,* 275 U. S. 142, and *Untermyer* v. *Anderson,* 276 U. S. 440. The general power to " lay and collect taxes, duties, imposts and excises " conferred by Article I, § 8 of the Constitution, and required by that section to be uniform throughout the United States, is limited by § 2 of the same article, which requires " direct " taxes to be apportioned, and § 9, which provides that " no capitation or other direct tax shall be laid unless in proportion to the census " directed by the Constitution

to be taken. As the present tax is not apportioned, it is forbidden if direct.

The meaning of the phrase " direct taxes " and the historical background of the constitutional requirement for their apportionment have been so often and exhaustively considered by this Court, *Hylton* v. *United States,* 3 Dall. 171; *Pollock* v. *Farmers Loan & Trust Company,* 157 U. S. 429, 158 U. S. 601; *Knowlton* v. *Moore,* 178 U. S. 41; *Nicol* v. *Ames,* 173 U. S. 509, 515, that no useful purpose would be served by renewing the discussion here. Whatever may be the precise line which sets off direct taxes. from others, we need not now determine. While taxes levied upon or collected from persons because of their general ownership of property may be taken to be direct, *Pollock* v. *Farmers Loan & Trust Company,* 157 U. S. 429, 158 U. S. 601, this Court has consistently held, almost from the foundation of the government, that a tax imposed upon a particular use of property or the exercise of a single power over property incidental to ownership, is an excise which need not be apportioned, and it is enough for present purposes that this tax is of the latter class. *Hylton* v. *United States, supra,* cf. *Veazie Bank* v. *Fenno,* 8 Wall. 533; *Thomas* v. *United States,* 192 U. S. 363, 370; *Billings* v. *United States,* 232 U. S. 261; *Nicol* v. *Ames, supra; Patton* v. *Brady,* 184 U. S. 608; *McCray* v. *United States,* 195 U. S. 27; *Scholey* v. *Rew,* 23 Wall. 331; *Knowlton* v. *Moore, supra;* see also *Flint* v. *Stone Tracy Co.,* 220 U. S. 107; *Spreckels Sugar Refining Co.* v. *McClain,* 192 U. S. 397; *Stratton's Independence* v. *Howbert,* 231 U. S. 399; *Doyle* v. *Mitchell Brothers Co.,* 247 U. S. 179, 183; *Stanton* v. *Baltic Mining Co.,* 240 U. S. 103, 114.

It is a tax laid only upon the exercise of a single one of those powers incident to ownership, the power to give the property owned to another. Under this statute all the other rights and powers which collectively constitute

property or ownership may be fully enjoyed free of the tax. So far as the constitutional power to tax is concerned, it would be difficult to state any intelligible distinction, founded either in reason or upon practical considerations of weight, between a tax upon the exercise of the power to give property *inter vivos* and the disposition of it by legacy, upheld in *Knowlton* v. *Moore, supra,* the succession tax in *Scholey* v. *Rew, supra,* the tax upon the manufacture and sale of colored oleomargarine in *McCray* v. *United States, supra,* the tax upon sales of grain upon an exchange in *Nicol* v. *Ames, supra,* the tax upon sales of shares of stock in *Thomas* v. *United States, supra,* the tax upon the use of foreign built yachts in *Billings* v. *United States, supra,* the tax upon the use of carriages in *Hylton* v. *United States, supra;* compare *Veazie Bank* v. *Fenno, supra,* 545, *Thomas* v. *United States, supra,* 370.

It is true that in each of these cases the tax was imposed upon the exercise of one of the numerous rights of property, but each is clearly distinguishable from a tax which falls upon the owner merely because he is owner, regardless of the use or disposition made of his property. See *Billings* v. *United States, supra;* cf. *Pierce* v. *United States,* 232 U. S. 290. The persistence of this distinction and the justification for it rest upon the historic fact that taxes of this type were not understood to be direct taxes when the Constitution was adopted and, as well, upon the reluctance of this Court to enlarge by construction, limitations upon the sovereign power of taxation by Article I, § 8, so vital to the maintenance of the National Government. *Nicol* v. *Ames, supra,* 514, 515.

It is said that since property is the sum of all the rights and powers incident to ownership, if an unapportioned tax on the exercise of any of them is upheld, the distinction between direct and other classes of taxes may be wiped out, since the property itself may likewise be taxed by resort to the expedient of levying numerous taxes upon its

uses; that one of the uses of property is to keep it, and that a tax upon the possession or keeping of property is no different from a tax on the property itself. Even if we assume that a tax levied upon all the uses to which property may be put, or upon the exercise of a single power indispensable to the enjoyment of all others over it, would be in effect a tax upon property, see *Dawson* v. *Kentucky Distilleries & Warehouse Co.*, 255 U. S. 288, and hence a direct tax requiring apportionment, that is not the case before us.

The power to give cannot be said to be a more important incident of property than the power to use, the exercise of which was taxed in *Billings* v. *United States,* and even though differences in degree may be carried to a point where they produce distinctions in kind, the present levy falls so far short of taxing generally the uses of property that it cannot be likened to the taxes on property itself which have been recognized as direct. It falls, rather, into that category of imposts or excises which, since they apply only to a limited exercise of property rights, have been deemed to be indirect and so valid although not apportioned.

2. The uniformity of taxation throughout the United States enjoined by Article I, § 8, is geographic, not intrinsic. A graduated tax, on legacies, granting exemptions, *Knowlton* v. *Moore, supra,* or on incomes, *Brushaber* v. *Union Pacific R. Co.,* 240 U. S. 1, does not violate this clause of the Constitution, nor are such taxes infringements on the Fifth Amendment. *Knowlton* v. *Moore, supra,* p. 109; *Brushaber* v. *Union Pacific R. Co., supra,* pp. 24, 25. Graduated taxes on inheritances or successions, with provisions for exemptions, have so often been upheld as not violating either the due process or the equal protection clauses of the Fourteenth Amendment, *Stebbins* v. *Riley,* 268 U. S. 137, as to leave little ground for supposing that taxation by Congress embracing these

features, and otherwise valid, could be deemed a denial of the due process clause of the Fifth. See *Van Oster* v. *Kansas*, 272 U. S. 465, 468.

It is suggested that the schemes of graduation and exemption in the present statute, by which the tax levied upon donors of the same total amounts may be affected by the size of the gifts to individual donees, are so arbitrary and unreasonable as to deprive the taxpayer of property without due process. But similar features of state death taxes have been held not to infringe the Fourteenth Amendment since they bear such a relation to the subject of the tax as not "to preclude the assumption that the legislature, in enacting the statute, did not act arbitrarily or without the exercise of judgment and discretion which rightfully belong to it." *Stebbins* v. *Riley, supra,* p. 145. No more can they be a basis for holding that the graduation and exemption features of the present statute violate the Fifth Amendment.

*The answer to both questions is, No.*

Opinion of MR. JUSTICE SUTHERLAND, dissenting, delivered by MR. JUSTICE BUTLER.

In the convention which framed the Constitution, Mr. King on one occasion asked what was the precise meaning of " direct taxation," and Mr. Madison informs us that no one answered. That Mr. Madison took the pains to record the incident indicates that it challenged attention but that no one was able to formulate a definition. And though we understand generally what is a direct tax and what taxes have been declared to be direct, we are still as incapable of formulating an exact definition as were those who wrote the taxation clauses into the Constitution. Since the *Pollock* case, however, we know that a tax on property, whether real or personal, or upon the income derived therefrom, is direct; and that to levy a tax by reason of ownership of property is to

tax the property. *Dawson* v. *Kentucky Distilleries Co.,* 255 U. S. 288, 294.

The right to give away one's property is as fundamental as the right to sell it or, indeed, to possess it. To give away property is not to exercise a separate element or incident of ownership, like the use of a carriage, but completely to sever the donor's relation to the property and leave in him no element or incident of ownership whatsoever. Reasonably it cannot be doubted that the power to dispose of property according to the will of the owner is a property right. If a tax upon the sale of property, irrespective of special circumstances, is a direct tax, it is clear that a tax upon the gift of property, irrespective of special circumstances, is, likewise, direct. In my opinion, both are direct because they are in substance and effect not excise taxes but taxes upon property. By repeated decisions of this Court it has become axiomatic that it is the substance and not the form that controls in such matters.

*Brown* v. *Maryland,* 12 Wheat. 419, involved the validity of a state statute which exacted a license fee of $50 of importers of foreign goods and other persons selling the same by wholesale, bale or package, etc. The act was held void as imposing a duty on imports. It was argued that the tax was not upon the article but upon the person; that the state had the power to tax occupations, and this was nothing more. To this Chief Justice Marshall replied (p. 444) in words that have been repeatedly approved in subsequent decisions of this Court:

"It is impossible to conceal from ourselves, that this is varying the form, without varying the substance. It is treating a prohibition, which is general, as if it were confined to a particular mode of doing the forbidden thing. All must perceive, that a tax on the sale of an article, imported only for sale, is a tax on the article itself."

In *Cook* v. *Pennsylvania*, 97 U. S. 566, it was held that a tax on the amount of sales made by an auctioneer was a tax upon the goods sold, and where these goods were imported in the original package and sold for the importer the law authorizing the tax was void.

*Nicol* v. *Ames*, 173 U. S. 509, is not to the contrary of these cases, but in complete accord with them. There it was held that a tax levied upon a sale of property effected at a board of trade or exchange was an excise laid upon the privilege, opportunity or facility afforded by boards of trade or exchanges for the transaction of the business and not upon the property *or the sale thereof*, which, it was conceded, would be a direct tax and void without apportionment. Brief quotations from the opinion will make the distinction clear. Referring to the cases which had been cited against the tax, including *Brown* v. *Maryland, supra,* and the *Pollock* case, it was said that all these cases involved the question whether the taxes assailed were in effect taxes upon property and (p. 519): "If this tax is not on the property *or on the sale thereof,* then these cases do not apply." At p. 520, answering the contention that the tax was one on the property sold, it was said: "It is not laid upon the property at all, nor upon the profits of the sale thereof, nor upon the sale itself considered separate and apart from the place and the circumstances of the sale." And finally at p. 521, the Court said in words that admit of no mistake: "A tax upon the privilege of selling property at the exchange and of thus using the facilities there offered in accomplishing the sale differs radically from a tax upon every sale made in any place. *The latter tax is really and practically upon property.* It takes no notice of any kind of privilege or facility, and the fact of a sale is alone regarded."

To me it seems plain that a tax imposed upon an ordinary gift, to be measured by the value of the property

given and without regard to any qualifying circumstances, is a tax by indirection upon the property, as much, for example, as a tax upon the mere possession by the owner of a farm, measured by the value of the land possessed, would be a tax on the land. To call either of them an excise is to sacrifice substance to a mere form of words. I think, therefore, the first question certified, without stopping to consider the second, should be answered in the affirmative.

MR. JUSTICE VAN DEVANTER and MR. JUSTICE BUTLER concur in this opinion.