**COMMISSIONER OF INTERNAL REVE-
NUE v. CITY BANK FARMERS'
TRUST CO.**
**No. 114.**

Circuit Court of Appeals, Second Circuit.
Dec. 17, 1934.

Frank J. Wideman, Asst. Atty. Gen., and
Sewall Key and Helen R. Carloss, Sp. Assts.
to Atty. Gen., for petitioner.

Taylor, Blanc, Capron & Marsh, and Ed-
ward M. Cameron, Jr., all of New York City
(Russell L. Bradford and George H. Craven,
both of New York City, of counsel), for re-
spondent.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge.

This petition presents the question of whether a deficiency in federal estate tax is due from the trustee named in a trust agreement made by Gertrude Feldman James, now deceased. The Board of Tax Appeals decided against the Commissioner (29 B. T. A. 1141), and he petitions for a review. Sections 1001–1003 of the Revenue Act of 1926, 44 Stat. 9, c. 27, and section 1001 (a), as amended by section 1101 (a) of the Revenue Act of 1932, 47 Stat. 169, c. 209 (26 USCA §§ 1224–1226).

The petitioner's claim is that the corpus of the trust created by the decedent in 1930 should be included in her gross estate for taxation. Section 302 (c) or (d) of the Revenue Act of 1926, 44 Stat. 9, c. 27 (26 USCA §§ 1094 (c, d).

Gertrude Feldman James, a nonresident of the United States, died May 20, 1931, after she had transferred on February 21, 1930, certain foreign securities in trust for certain purposes during the lifetime of her two daughters, or the survivor of them. The income of the trust was to be paid to her for life or until the termination of a trust, whichever occurred first. If she died before such termination, the income was to be paid to her husband, Samuel James, so long as he lived, or until the termination of the trust. If he died prior to the termination of the trust, the principal was to be divided into as many shares as there were children of the grantor and Samuel James then living, plus one share for the descendants then living of any deceased child. The income of each share was to be applied to the use of such child during his life or until the end of the trust, whichever should occur first, and upon his death prior to the termination of the trust the principal was to be paid to his descendants in such proportions as he had appointed by will, and any part not so appointed was to be paid to his descendants, if living, in equal parts per stirpes and not per capita. If no descendants of such child were living at that time, the principal was to be paid in equal parts per stirpes and not per capita to the surviving children of the settler and Samuel James and the descendants of any deceased child, or, if none were living, to such persons as should then constitute the heirs at law of Samuel James, according to the laws of New York then governing the descent of real estate. Upon the termination of the trust, the prin-cipal was to be paid to Samuel James, if then living; if not, to the settlor if then living, or, if not, to such beneficiaries as were then receiving the income as outlined, in the same proportion, or, if no such beneficiaries were then living, to the heirs of Samuel James according to the laws of New York governing the descent of real estate.

Paragraph 12 provided:

"The Settlor shall have the right, at any time, and from time to time during her life, by an instrument or instruments in writing delivered to the Trustee to modify, alter, or revoke this agreement in whole or in part, or to change any beneficial interest hereunder, provided, however, that no such revocation, alteration, or change of beneficial interest shall be effected without the consent in writing of the Trustee and of the said Samuel James during his life and, after his death, of the Trustee and of Frank Samuel James, brother of the said Samuel James during his life and in case of disagreement between the Settlor and the City Bank Farmers Trust Company, then the decision of the said Samuel James or Frank Samuel James, as the case may be, shall be final and the Settlor reserves to herself the right to increase this trust by delivering property or making insurance policies payable to the Trustee for that purpose, but the duties and liabilities of the trustee shall not be substantially increased without its written consent."

When the settlor died, May 20, 1931, her husband survived.

Thus, under the provisions of this trust, the interest of Samuel James was the income for life, after the death of the settlor, with right to the corpus whenever the trust terminated. Moreover, there was a discretion placed in the trustees at any time during the term of the trust to use for his support, care, comfort, and advancement in life any part of the principal of the trust as the trustees saw fit. In any case, the term of the trust was the lives of the two daughters, or the survivor of them. The power to revoke was a limitation of the benefits to be given to the children under the trust. The settlor's death removed these limitations since the possibility of revocation then terminated, and the trust would continue during their lives, if they survived their father, Samuel James. If not, their father Samuel James received the principal. The settlor's will to preserve the limitations ended with her death. The economic benefit would pass to the children if and when they survived their father by her death, providing the corpus was not used, as permissible, for

Samuel James' "care, comfort, support or advancement in life." Her death would then become the generating source within the authorities. Tyler v. United States, 281 U. S. 497, 50 S. Ct. 356, 74 L. Ed. 991, 69 A. L. R. 758.

Section 302 (d) of the Revenue Act 1926 (26 USCA § 1094 (d) requires that there shall be included in the decedent's gross estate the value of any property of which the decedent has at any time made a transfer by trust, where the enjoyment was subject, at the date of death, to any change through the exercise of a power either in the decedent alone "or in conjunction with any person" to alter, amend or revoke the trust. While the decedent in her trust reserved the right·to revoke or modify the trust in conjunction with her husband, if living, and the trustee, and after the husband's death, in conjunction with the trustee and her husband's brother, still, if the trust were terminated, the corpus passed to the husband if living and to the children if he were not living. The statute is clear and comprehensive. It is sufficient if there is a power in the grantor to alter or amend the trust even if the settlor may make no change for his benefit. Porter v. Commissioner, 288 U. S. 436, 53 S. Ct. 451, 77 L. Ed. 880.

We have held that a provision in the trust agreement for a trustee's consent to a revocation did not void the tax. Witherbee v. Commissioner (C. C. A.) 70 F.(2d) 696. But the Supreme Court held in Reinecke v. Northern Trust Co., 278 U. S. 339, 49 S. Ct. 123, 125, 73 L. Ed. 410, 66 A. L. R. 397, that, where the settlor established two trusts in which he reserved a power of revocation to himself alone, the value of such trusts should be included in the decedent's gross estate for tax purposes, but that in five trusts where revocation was reserved to the settlor only with the consent of some beneficiary, the corpus of such trusts were not to be included within the decedent's estate, for taxation purposes. The reason given by the court was that the settlor could effect no change in the beneficial interests in the trust without the consent of the beneficiary, and the court said:

"Since the power to revoke or alter was dependent on the consent of the one entitled to the beneficial, and consequently adverse, interest, the trust, for all practical purposes, had passed as completely from any control by decedent which might inure to his own benefit as if the gift had been absolute. * * * The shifting of the economic .interest in the trust property which was the sub-

ject of the tax was thus complete as soon as the trust was made. His power to recall the property and of control over it for his own benefit then ceased and as the trusts were not made in contemplation of death, the reserved powers do not serve to distinguish them from any other gift inter vivos not subject to the tax."

See, also, Lit v. Commissioner (C. C. A.) 72 F.(2d) 551.

And in Reinecke v. Smith, 289 U. S. 172, 53 S. Ct. 570, 572, 77 L. Ed. 1109, the rule announced in the Northern Trust Co. Case, supra, was again affirmed, the court saying:

"The tax was upheld as applied to the corpus of trusts over which the grantor had sole power of revocation. It was, however, condemned as to those where revocation was dependent upon joint action of the grantor and the beneficiary, for the reason that the interest of the beneficiary was adverse and the grantor unable at will to alter or destroy the trust."

Settlor's husband was entitled to receive the income of the trust fund after her death, and, having survived the decedent, he received the full income. Thus his right to receive the full trust income was a beneficial and adverse interest. And upon the termination of the trust, regardless of whether or not the settlor should then be living, the corpus was payable to her husband. Other provisions, without limitation as to time, applied to the use by the husband of as much of the principal as might be deemed advisable for his care, comfort, and support. The interest of the husband in the principal was in no way contingent. Section 40, N. Y. Real Property Law (Consol. Laws, c. 50), provides that a future estate is vested when there is a person in being, who would have an immediate right to possession of the property, on the determination of all the intermediate or precedent estates. Moore v. Littel, 41 N. Y. 66; Matter of Barstow, 230 App. Div. 371, 244 N. Y. S. 588, affirmed 256 N. Y. 649, 177 N. E. 177.

As to the husband's interests, they were vested and adverse to the settlor's. The control over the disposition of such of the trust property as might be measured as belonging to him, and its economic benefits, were not left in the hands of the settlor. "The shifting of the economic interest in the trust property which was the subject of the tax was thus complete as soon as the trust was made." Reinecke v. Northern Trust Co., supra.

Nor was this transfer in contemplation of death within the provisions of section 302

(c) of the Revenue Act 1926 (26 USCA § 1094 (c). The husband's property did not pass from the control, possession, or enjoyment of the settlor at her death. The transfer was made not in contemplation of her death, but long prior to her death, without any reserve power of control over her husband's interests or the disposition thereof. Heiner v. Donnan, 285 U. S. 312, 52 S. Ct. 358, 76 L. Ed. 772; Hoeper v. Tax Commission of Wisconsin, 284 U. S. 206, 52 S. Ct. 120, 76 L. Ed. 248. As to the husband's interest, it cannot be said that the death of the settlor was the generating source from which authority to impose taxes takes its being, and "it is the power to transmit or the transmission or receipt of property by death which is the subject levied upon by all death duties." Tyler v. United States, 281 U. S. 502, 50 S. Ct. 356, 358, 74 L. Ed. 991, 69 A. L. R. 758. The statute (section 302 (c) does not in terms relate to transfers in title at the time of death. The reserving of income which is ended at death is not a transfer intended to take effect in possession or enjoyment at or after death. Helvering v. Duke, 290 U. S. 591, 54 S. Ct. 95, 78 L. Ed. 521; May v. Heiner, 281 U. S. 238, 50 S. Ct. 286, 74 L. Ed. 826, 67 A. L. R. 1244; Commissioner v. Wallace (C. C. A.) 71 F. 1002.

In Lit v. Commissioner (C. C. A.) 72 F. (2d) 551, the settlor established a trust to last for the lives of his wife and himself or the survivor. The trustee was to pay the income of the trust to the wife for life and at her death to pay the income to the settlor for life (him surviving). At the death of the survivor, the trustee was to pay the corpus of the trust to the son. There were further provisions if the son were dead. The settlor died leaving his wife and son surviving. The settlor had reserved the power to revoke with the consent of his wife. The Circuit Court of Appeals expressed itself as being in "entire accord with the reasoning and conclusions" set out in the decision of the Board of Tax Appeals (28 B. T. A. 853). The Board said that "any person" as used in section 302 (d) is not to be given a literal interpretation, but is to be read "any person not a beneficiary of the trust." It was held that the value of the wife's life estate could not be taxed since her interest was adverse and she had to consent to revocation. But the son's remainder interest was held to be taxable and to be included as part of the decedent's gross estate. The settlor's power to revoke the remainder interest was not dependent upon securing the remainderman's consent. All the settlor had to do was revoke in conjunction with his wife

who had no adverse interest as to the remainder.

■ Therefore we conclude that Samuel James had an adverse interest and that, as to his interests in the trust fund, they could not be taxed under the statute. Nor do we think that the interests of their two daughters in the trust fund might be calculated and included as part of the corpus of the settlor's gross estate.

■ While no one with an adverse interest could prevent the settlor from exercising her will to the extent of altering or revoking the interests to be transferred to her daughters as created by the trust, and while until her death she had the power to destroy her daughters' interests, which were contingent on her continuing the will which created them, still in view of the permissible use of the entire corpus for the "care, comfort, support or advancement in life" of her husband and the right to use any or all of it at any time during his lifetime, it may well be that the daughters would never become entitled to any of the corpus of the trust. This uncertainty would render it unjust to tax the interest of the daughters so contingent. The death of the settlor cannot be said to be the generating source of the children's interests. Tyler v. United States, supra. It may not be said that at the settlor's death the contingency upon which those interests were based ended. It did not end because of the permissibility, at all times during the life of Samuel James, to use all of the corpus if conditions and circumstances reasonably required the trustees to act in furtherance of the clause of granting "care, comfort, support or advancement in life" to Samuel James. It is only the creation of new interests, brought into being by the death of the settlor, which may be properly taxed for a death duty.

We therefore conclude that no tax may be imposed and that the corpus of this trust fund may not be included in the gross estate of the settlor for death taxes.

Order affirmed.

L. HAND, Circuit Judge (dissenting).

It is not possible, I think, to read section 302 (d) of the Revenue Act of 1926 (26 US CA § 1094 (d), as the Board read it in Lit v. Commissioner, 28 B. T. A. 853; and as the Third Circuit did in the same case on appeal, 72 F. (2d) 551. The contrast between it and section 219 (g) of the act (26 USCA § 960 note) is too strong an indication that Congress meant in each section exactly what

it said; section 302 (d) covers powers whose exercise is conditional on the approval of the beneficiary, as well as of any one else. The statement in the committee reports (House Report 179; Senate Report 398), that section 302 (d) "is in accord with the principle of section 219 (g) of the bill which taxes to the grantor the income of a revocable trust," refers only to the general policy of each section, and does not make the scope of each identical. We cannot escape deciding how far section 302 (d) is constitutional, taken literally. I must own that I might have thought that it was entirely so, if confined to gifts made after 1926. A tax upon a gift is an excise and within the competence of Congress. Bromley v. McCaughn, 280 U. S. 124, 50 S. Ct. 46, 74 L. Ed. 226. I cannot conceive that it should make any difference what name is given to it; whether it is classed as testamentary or inter vivos. Of course its incidence is very different in each case; in the first the legatees bear it, in the second, the donees. Moreover if an estate tax, the value of the gift at the settlor's death is added to his other property, and the legatees must pay not only upon the sum of both, but often at a higher rate; the tax might conceivably eat up the whole testamentary estate. Yet still I might not have found in all this anything objectionable under the Fourteenth Amendment. Donees and legatees are both mere volunteers, objects of the settlor's bounty; they have not the slightest claim to equality of treatment from him, and, the gift being by hypothesis made with full knowledge of the law, I should think that its incidence might be taken as deliberately intended.

Therefore, even without any reserved power I might have thought section 302 (d) valid. In that I should however have been altogether wrong because of Heiner v. Donnan, 285 U. S. 312, 52 S. Ct. 358, 76 L. Ed. 772. As to the equitable interests of the children, the addition of the power does make it valid, although the power was not absolute, but required the concurrence of two others, the husband and the trustee. In the case of some conditions we could say with certainty when the power did or did not exist; for example the condition might be that the income from the gift must fall to two per cent. or less; in that case no power would ever exist, unless before the settlor's death the income did fall so low. If it never did, the case would be throughout like Heiner v. Donnan, supra, 285 U. S. 312, 52 S. Ct. 358, 76 L. Ed. 772. But in the case at bar the condition continued unascertainable for as long as the settlor lived because no one could say, out of all the possible substitutes she might propose, that she could not persuade her husband and the trustee to go along with any one. I think that it is on the taxpayer to meet this and show that the husband and the trustee would never have concurred in any revocation the settlor might make; otherwise the power was at least formally outstanding and her death was necessary finally to root the limitations beyond displacement. This is as I read Reinecke v. Smith, 289 U. S. 172, 53 S. Ct. 570, 77 L. Ed. 1109, and Witherbee v. Commissioner, 70 F.(2d) 696 (C. C. A. 2). Reinecke v. Northern Trust Co., 278 U. S. 339, 49 S. Ct. 123, 73 L. Ed. 410, was different; there were no such powers, and no such statute.

Therefore the interests not limited to the husband may be taxed, just as the Third Circuit held in Lit v. Commissioner, supra, 72 F.(2d) 551. However, the husband's own interests, disregarding that dependent on the trustee's discretion, are no different from what they would have been, had the settlor's power been wholly omitted. Under section 23 of the New York Personal Property Law (Consol. Laws, c. 41), just as in equity, the settlor and the beneficiary might at any time have united to end his interest. So far Heiner v. Donnan, supra, 285 U. S. 312, 52 S. Ct. 358, 76 L. Ed. 772, rules, and section 302 (d) is unconstitutional. There remains only his interest in the corpus, which the trustees might take from his children and give to him. Such an interest is not vested, even in the sense in which that word is used in New York, for it does not succeed upon the termination of the preceding estate. Moore v. Littel, 41 N. Y. 66. True, a contingent remainder is taxable if the testator's death ends the contingency (Klein v. U. S., 283 U. S. 231, 51 S. Ct. 398, 75 L. Ed. 996); but the same does not necessarily follow if it does not then end, as here. The question is therefore as to the person who must forecast an unpredictable event. My brothers think that the burden of proof should be upon the Treasury to show that the trustee will not exercise its power, and that as that remains uncertain, there can be no tax. We do indeed recognize some juridical augurs, actuaries among others; and it is for this reason that we can conventionally apportion between the husband and the children the value of the res here in suit, though nobody can tell which will in fact die first. But though we do affect such a prediction, we require some statistical background before we will, and there are no statistics as to a trustee's giving the principal of a fund to a life owner. In such a dilemma I think we should ignore the unascertainable possibility and

treat the children's remainders as finally vested, just as we ignore the unpredictable conditions on the settlor's power to revoke. In each case there is a formally granted interest whose chances of displacement could not be calculated; in each we should ignore the possibility. I am quite aware that this is all largely matter of words, but so is much of the law of property; and unless we treat such formal distinctions as real, that law will melt away and leave not a rack behind. I would therefore add to the settlor's testamentary estate the entire value of the gift, less the actuarial value of the husband's interests.