**INDUSTRIAL TRUST CO. et al. v.
UNITED STATES.**

No. 42514.

Court of Claims.

Feb. 4, 1935.

Charles P. Taft, 2d, of Cincinnati, Ohio, for plaintiffs.

Guy Patten, of Washington, D. C., and Frank J. Wideman, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

LITTLETON, Judge.

The question for decision is whether the proceeds of a life insurance policy may be included in the gross estate of the insured for the purpose of the estate tax imposed by the Revenue Act of 1926 when the policy provides for payment to certain named beneficiaries, but, in the event of their death prior to that of the insured, then to the executor, administrators, or assigns of the insured, and when the policy is silent as to whether the insured might change the beneficiary, withdraw the cash surrender value, or pledge the policy as security for a loan.

The insurance policy in question was taken out by the decedent on his own life March 2, 1892, and all premiums were paid by him. The policy contract as originally issued to the insured upon a written application by him was a life policy for $50,000 and gave the insured control over the proceeds and granted him certain privileges to change the contract to a paid-up policy. The privilege of accepting a paid-up policy for $42,000 was exercised by the insured in 1912. The policy provided that its proceeds should be paid at the death of the insured to his wife, if living, or if she should not be living, then payment should be made to his children, and, in the event both his wife and his children should predecease him, the proceeds should be paid to his assigns or to his estate. The policy did not expressly reserve the right in the insured to change the beneficiaries. He died May 30, 1930. At that time his wife had died, but his children were living and the proceeds of the policy were paid to them.

The question upon which the decision in this case must turn is whether the provision of the policy that if the beneficiary named should predecease the insured the proceeds of the policy should be paid to such other persons as the insured might designate, or to his estate, requires the inclusion of the amount of the policy (the $40,000 exemption having already been allowed) in the decedent's gross estate under section 302 (g), Revenue Act of 1926 (26 USCA § 1094 (g). That section provides that the value of the gross estate of the decedent shall include the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, "to the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life." Subdivision (h) of the same section (26 USCA § 1094 (h) makes the part quoted applicable whether the policy was

taken out before or after the effective date of the Revenue Act of 1926.

■■■ We are of opinion that the amount of the policy in question was properly included in the decedent's gross estate for the purpose of determining the net estate subject to the tax. At the outset it should be observed that the language of the statute is very broad and by its plain terms includes all insurance taken out by the decedent on his own life irrespective of when taken out and, also, whether or not the insured retained unqualified control over the proceeds of the policy at all times, after the contract was issued. It may well be that a life insurance policy absolutely assigned or made payable to a beneficiary, his executors, administrators, or assigns would not constitute a part of the gross estate of the insured under the section in question; but with such a case we are not here concerned. The unequivocal language of the statute and the legislative history of the provision in question manifest an intent and purpose to reach the proceeds of all insurance taken out by the decedent upon his own life, allowing an exemption of $40,000 as to such insurance payable to specific beneficiaries where, in cases like the one at bar, such insurance is payable to such person as the decedent may designate other than the original beneficiary named in the policy or to his estate in the event the first-named beneficiary predeceased the insured. The statutory provision in question first appeared as section 402 (f) in the Revenue Act of 1918 (40 Stat. 1097) and has been re-enacted without change in all succeeding statutes.[1] In reporting the Revenue Act of 1918 the Ways and Means Committee said (H. Rep. 767, 65th Congress, 2d Sess., p. 22): "The gross estate section has been amended to specifically include (1) insurance receivable by the executor under policies taken out by the decedent upon his own life and (2) insurance in excess of $40,000 receivable by all specific beneficiaries under policies taken out by the decedent upon his own life. (1) Insurance payable to the executor or to the estate is now regarded as falling within section 202 (a) of the existing statute and this construction of the existing statute is now written into the new bill for the sake of clearness. The amendment will serve the further purpose of putting on notice those who acquaint themselves with the statute for the purpose of making more definite plans for the disposition of their property. (2) The provision with respect to specific beneficiaries has been included for the reason that insurance payable to such beneficiaries usually passes under a contract to which the insurance company and the individual beneficiary are the parties in interest and over which the executor exercises no control. Amounts passing in this way are not liable for expenses of administration or debts of the decedent and therefore do not fall within the existing provisions defining the gross estate. It has been brought to the attention of the committee that wealthy persons have and now anticipate resorting to this method of defeating the estate tax. Agents of insurance companies have openly urged persons of wealth to take out additional insurance payable to specific beneficiaries for the reason that such insurance would not be included in the gross estate. A liberal exemption of $40,000 has been included and it seems not unreasonable to require the inclusion of amounts in excess of this sum."

The foregoing statement makes it clear that Congress incorporated this provision in the statute for the sole purpose of requiring the proceeds of all insurance, with the exception of the exemption specified, taken out by the decedent on his own life to be included in his taxable estate, although the insured or his executor has no direct control over insurance payable to a specific beneficiary so long as that beneficiary lives. A consideration of the nature of the tax further demonstrates the applicability of the statute to all insurance taken out by the decedent on his own life, qualified only by the exemption allowed, and also removes any doubt that may exist as to the validity of the provision in question. The estate tax is imposed upon the privilege to transmit or the transmission or receipt of property by death and rests upon the principle that death is the generating source of valuable property rights not theretofore possessed or enjoyed by the recipient. Knowlton v. Moore, 178 U. S. 41, 57, 20 S. Ct. 747, 44 L. Ed. 969; Chase National Bank v. United States, 278 U. S. 327, 49 S. Ct. 126, 73 L. Ed. 405, 63 A. L. R. 388. The question in every case is not whether there has been a transfer, in the strict sense of the term, of property by death, but whether death has brought into being or ripened for the recipient of

---

[1] Section 402 (f), Revenue Act of 1921 (42 Stat. 278); section 302 (g), Revenue Acts of 1924 and 1926, 26 USCA § 1094 (g) and note.

the donor's bounty valuable property rights not theretofore fully enjoyed. Tyler et al. v. United States, 281 U. S. 497, 50 S. Ct. 356, 74 L. Ed. 991, 69 A. L. R. 758. In the last-mentioned case the court said at pages 502 and 503 of 281 U. S., 50 S. Ct. 356, 358: "A tax laid upon the happening of an event, as distinguished from its tangible fruits, is an indirect tax which Congress, in respect of some events not necessary now to be described more definitely, undoubtedly may impose. If the event is death and the result which is made the occasion of the tax is the bringing into being or the enlargement of property rights, and Congress chooses to treat the tax imposed upon that result as a death duty, even though, strictly, in the absence of an expression of the legislative will, it might not thus be denominated, there is nothing in the Constitution which stands in the way.

"The question here, then, is, not whether there has been, in the strict sense of that word, a 'transfer' of the property by the death of the decedent, or a receipt of it by right of succession, but whether the death has brought into being or ripened for the survivor, property rights of such character as to make appropriate the imposition of a tax upon that result (which Congress may call a transfer tax, a death duty or anything else it sees fit), to be measured, in whole or in part, by the value of such rights."

The tax is not limited to the transmission of property directly from the decedent, but includes, as well, property, the completed transfer or the possession and enjoyment of, which relates to or is dependent upon the death of the decedent. Porter v. Commissioner, 288 U. S. 436, 53 S. Ct. 451, 77 L. Ed. 880; Chase National Bank v. United States, supra; Tyler v. United States, supra. Congress has from time to time expanded the bases for such taxation in furtherance and in aid of the purpose to reach inter vivos transfers which are mere substitutes for testamentary dispositions as well as actual transfers at death. It was in accordance with this principle and purpose that the section in question was enacted, and its history shows that Congress merely recognized the fact that insurance taken out by a decedent upon his own life, payable at his death, and for which he pays all premiums, bears such a close relationship to death, and the shifting of the economic benefits is so contingent and dependent upon the event of death, that the amount receivable is commonly regarded as a part of the estate which he leaves when he dies.

Plaintiffs insist that the rights of the beneficiaries named in the policy were vested and that nothing whatever passed to them upon the death of the insured. For the purpose of this case we think this statement is not entirely accurate. In the designation of the beneficiary we think the decedent did not divest himself (his estate) of all beneficial interest in the proceeds of insurance payable under the policy and his interest therein was not extinguished until his death. No absolute right was acquired by the beneficiary during the lifetime of the insured to the proceeds of the insurance. Such right was contingent upon the prior death of the decedent. This right passed under a contract to which the decedent was a party. Such interest as the named beneficiaries in this case had would have been wholly extinguished by their death prior to that of the insured, and, in such event, the proceeds of the policy would have been payable to such person as the insured might designate or to his estate. We think it cannot be successfully contended that these contingencies were so remote as to take the case outside the provision of the statute, for we cannot speculate upon whether a beneficiary will outlive the insured. A beneficial interest in the proceeds was reserved by decedent to his estate or his assigns, in case he survived the beneficiaries, and passed to his children only in the event they survived him and also his wife. So long, therefore, as the decedent lived it could not be known that the beneficiaries named in the policy would receive the proceeds of the insurance. Whatever their interests, there was not a complete transmission of the proceeds or an absolute right thereto during the lifetime of the insured. His death was the indispensable event giving rise to or enlarging valuable property rights not theretofore possessed or enjoyed. In Klein et al. v. United States, 283 U. S. 231, 51 S. Ct. 398, 399, 75 L. Ed. 996, the court said: "Nothing is to be gained by multiplying words in respect of the various niceties of the art of conveyancing or the law of contingent and vested remainders. It is perfectly plain that the death of the grantor was the indispensable and intended event which brought the larger estate into being for the grantee and effected its transmission from the dead to the living, thus satis-

fying the terms of the taxing act and justifying the tax imposed. Compare Tyler v. United States, 281 U. S. 497, 50 S. Ct. 356, 74 L. Ed. 991, 69 A. L. R. 758."

In Burnet v. Wells, 289 U. S. 670, 53 S. Ct. 761, 77 L. Ed. 1439, the court pointed out that amendments had been made to the statute from time to time for the purpose of preventing avoidance of tax upon estates and, after citing various decisions in cases where various methods had been employed to avoid the estate tax, said at page 677 of 289 U. S., 53 S. Ct. 761, 763: "In these and other cases there has been a progressive endeavor by the Congress and the courts to bring about a correspondence between the legal concept of ownership and the economic realities of enjoyment or fruition." And again at page 679 of 289 U. S., 53 S. Ct. 761, 764, the court said: "One who takes out a policy on his own life, after application in his own name accepted by the company, becomes in so doing a party to a contract, though the benefits of the insurance are to accrue to some one else. Mutual Life Ins. Co. v. Hurni Packing Co., 263 U. S. 167, 177, 44 S. Ct. 90, 68 L. Ed. 235, 31 A. L. R. 102; Vance on Insurance, pp. 90, 91, and 108. The rights and interests thereby generated do not inhere solely in those who are to receive the proceeds. They inhere also in the insured who in co-operation with the insurer has brought the contract into being."

The case of Lewellyn v. Frick, 268 U. S. 238, 45 S. Ct. 487, 69 L. Ed. 934, cited by plaintiffs, is not in point here. That case held merely that section 402 (f) of the Revenue Act of 1918 was not retroactive and that the statute referred only to transactions taking place after its passage, and that the latter provision in the Revenue Act of 1924 making an equivalent provision applicable to transactions which took place prior to the enactment of the act was an aid to the conclusion that the provision in the earlier act was not intended to be retroactive. It appears that the insurance policy involved in the Frick Case reserved certain powers and options to the insured to change the policy, but the effect of these reserved powers was not considered by the court until the decision in Chase National Bank v. United States, supra. In the last-mentioned case the court was dealing with policies of insurance in which the insured reserved the power to change the beneficiary, and it was held that termination at death of the power of the decedent to change beneficiaries, with the consequent passing to the designated beneficiaries of all rights under the policies freed from the possibility of its exercise, was the legitimate subject of a transfer tax. The question involved in the case at bar was not before the court in the Chase National Bank Case and was not discussed, and we find nothing in the opinion of the court contrary to our conclusion in the case at bar.

Article 27, Regs. 70, as amended by T. D. 4331, XI–I C. B. 330, provides that all insurance in excess of $40,000 receivable by beneficiaries other than the estate, regardless of when taken out, "must be included in the gross estate where the decedent during his life retained legal incidents of ownership in the policies of insurance * * *." Following this provision certain examples are given as an indication of when the proceeds are to be included in the gross estate, but such examples were not intended to be exclusive. This regulation was continued in article 27, Regs. 80. And article 25 of such regulations provided that "the decedent possesses a legal incident of ownership if the rights of the beneficiary to receive the proceeds are conditioned upon the beneficiary surviving the decedent." We think these regulations are a proper interpretation of the statute.

The United States Board of Tax Appeals has held that the proceeds of a life insurance policy taken out by the decedent on his own life and payable to designated beneficiaries, without express provision in such policies that the insured might change the beneficiary, are not includable in the gross estate of the decedent. Liebes v. Commissioner, 20 B. T. A. 731; Blood v. Commissioner, 22 B. T. A. 1000; Reed v. Commissioner, 24 B. T. A. 166; Parker et al. v. Commissioner, 30 B. T. A. 342; Reybine, Executrix, v. Commissioner, 31 B. T. A. 314. In all of the above cases, except that of Reybine, Executrix, v. Commissioner, the proceeds of the policies involved were payable to the decedent's estate or to his assigns if the designated beneficiaries died prior to the death of the insured. In the Reybine Case the insurance policy was unconditionally assigned to a trust which the insured had no power to revoke. That decision is therefore not in point here. In none of the cases cited above, except Parker et al. v. Commissioner, did the Board of Tax Appeals discuss the precise point raised in the case at bar.

In the last-mentioned case the Board said: "The provision in the policy that in case of death of beneficiary prior to that of insured, the insurance would be payable to the executors, administrators, or assigns of the insured, is not sufficient to prevent the vesting in the beneficiary from being complete. No act of the insured could prevent the beneficiary from receiving the full $10,-000 of insurance on his death. Her interest could be defeated only by her death prior to that of the insured." In our view the fact stated in the last sentence of the quoted statement from the Board brings a case, such as the one at bar, within the express language of the taxing act and discloses, we think, such an interest in the contract and its proceeds in the decedent as to justify the inclusion of the amount of the policy in the gross estate. For this and other reasons herein stated, we are unable to concur in the decisions of the Board, and also the decision to the same effect in Ballard v. Helburn (D. C. Ky.) 9 F. Supp. 812, decided January 4, 1934.

Plaintiffs next contend that if section 302 (g) of the Revenue Act of 1926 taxes the proceeds of a life insurance policy, such as the one in question, it violates the due process clause of the Fifth Amendment to the Constitution. This contention seems to be based upon the proposition that title to the proceeds of the policy taken out by the decedent on his own life had completely vested in the beneficiaries named in the policy and that the inclusion thereof in the gross estate would be to measure the tax of the decedent by the inclusion of the property of another. We think this contention cannot be sustained for the reasons hereinbefore given. The Supreme Court has repeatedly sustained the power of Congress to impose death taxes. Knowlton v. Moore, supra; Edwards v. Slocum, 264 U. S. 61, 44 S. Ct. 293, 68 L. Ed. 564; Nichols v. Coolidge, 274 U. S. 531, 47 S. Ct. 710, 71 L. Ed. 1184, 52 A. L. R. 1081. And in so doing, it has avoided any objection to such legislation being retroactive or affecting vested interests upon the principle that such taxes are imposed upon " * * * not the interest to which some person succeeds upon a death, but the interest which ceased by reason of the death." The opinions in Tyler v. United States, supra, and Klein et al. v. United States, supra, were based upon this point. Since Knowlton v. Moore, supra, it has been settled that the power of Congress to impose death taxes, under whatever form or name it may adopt, rests upon the principle that death is the generating source upon which the authority to impose such taxes takes its being, and "it is the power to transmit or the transmission or receipt of property by death which is the subject levied upon by all death duties." Knowlton v. Moore, supra, page 57 of 178 U. S., 20 S. Ct. 747, 754. This principle was reaffirmed in Tyler v. United States, supra.

In the instant case, the rights of the decedent's children were contingent, in the first instance, upon the death of their mother who was named as the first beneficiary, and, in the next, upon the death of the decedent. The death of the wife of the insured removed the first contingency. We think there can be no distinction between the rights of the children, which were contingent upon their surviving their mother, and the rights of the decedent, which were contingent upon his surviving the children. Upon the death of the wife of the insured, the matter was then reduced to the provision that the policy was payable to the children or the decedent, depending upon which survived the other. Under the terms of the policy all were equal in character, hence they were equal under the taxing act. When the interests of the beneficiaries are stressed, a like emphasis must be laid upon the interest of the decedent. The position of plaintiffs appears to assume that the proceeds of the policy in question were payable to the beneficiaries named, their heirs, executors, or administrators, as was the case in the Central Nat. Bank of Washington v. Hume, 128 U. S. 195, 9 S. Ct. 41, 32 L. Ed. 370, cited by plaintiffs; but the policy in this case was not so payable. This marks the distinction between an interest completely vested in money payable in the future and an interest wholly contingent. If the interest is contingent and the contingency is death, then we think it is within the power of Congress to impose the tax in question. Klein et al. v. United States, supra; Tyler et al. v. United States, supra. The taxing act does not, we think, violate a vested interest in such case for the reason that a contingent right can never become completely vested until the event occurs upon which it depends.

In Burnet v. Wells, supra, the court said, at pages 677 and 678 of 289 U. S., 53 S. Ct. 761, 764: "The controversy is one as to the boundaries of legislative power. It must be dealt with in a large way, as

questions of due process always are, not narrowly or pedantically, in slavery to forms or phrases. * * * Refinements of title are without controlling force when a statute, unmistakable in meaning, is assailed by a taxpayer as overpassing the bounds of reason, an exercise by the lawmakers of arbitrary power. In such circumstances the question is no longer whether the concept of ownership reflected in the statute is to be squared with the concept embodied, more or less vaguely, in common-law traditions. The question is whether it is one that an enlightened legislator might act upon without affront to justice. Even administrative convenience, the practical necessities of an efficient system of taxation, will have heed and recognition within reasonable limits. Milliken v. United States, 283 U. S. 15, 24, 25, 51 S. Ct. 324, 75 L. Ed. 809; Reinecke v. Smith, supra [289 U. S. 172, 53 S. Ct. 570, 77 L. Ed. 1109]. Liability does not have to rest upon the enjoyment by the taxpayer of all the privileges and benefits enjoyed by the most favored owner at a given time or place. Corliss v. Bowers, supra [281 U. S. 376, 50 S. Ct. 336, 74 L. Ed. 916]; Reinecke v. Smith, supra. Government in casting about for proper subjects of taxation is not confined by the traditional classification of interests or estates. It may tax, not only ownership, but any right or privilege that is a constituent of ownership. Nashville, C. & St. L. Ry. Co. v. Wallace, 288 U. S. 249, 268, 53 S. Ct. 345, 77 L. Ed. 730 [87 A. L. R. 1191]; Bromley v. McCaughn, 280 U. S. 124, 136, 50 S. Ct. 46, 74 L. Ed. 226." In further support of this contention plaintiffs cite May v. Heiner, 281 U. S. 238, 50 S. Ct. 286, 287, 74 L. Ed. 826, 67 A. L. R. 1244, and McCormick et al. v. Burnet, 283 U. S. 784, 51 S. Ct. 343, 75 L. Ed. 1413. In the first, which arose under section 402 (c) of the Revenue Act of 1918 (40 Stat. 1097), the trust instrument transferred a life estate to one beneficiary and the remainder to the grantor's children, "their distributees, or appointees." The court held the title in the latter had been definitely fixed by the trust instrument. In the second there was likewise no contingent reversion to the donor. An analysis of the trust instrument, which appears in the footnote to the opinion, discloses that upon the death of any beneficiary his share was payable as he might direct by will and in default thereof to his surviving issue, and in default of surviving issue to the surviving beneficiaries. Under the terms of the trust the corpus could never be returned to the donor upon the death of any beneficiary. In the case of Nichols v. Coolidge, supra, also involving section 402 (c) of the 1918 Act, the deeds conveyed absolute title to the real estate with covenants of warranty. The trust instrument reserved a life estate to the grantor and provided that the interest of any beneficiary predeceasing the grantor should pass as provided by the statute of distribution in effect at the time of the death of such survivor.

In those cases the title of the beneficiary did not depend upon the death of the donor; there was a title sufficiently vested in the beneficiary to pass, at his death, to his heirs or assigns. This distinction is fundamental when the character of the rights of the "other beneficiaries" in the instant case are considered. Untermyer v. Anderson, 276 U. S. 440, 48 S. Ct. 353, 72 L. Ed. 645, involved a gift fully consummated before the effective date of the Revenue Act of 1924 (43 Stat. 253) under which it was sought to be taxed.

Plaintiffs are not entitled to recover and the petition must be dismissed. It is so ordered.