CHAS. C. STEWARD MACH. CO. v. DAVIS.*

No. 8410.

Circuit Court of Appeals, Fifth Circuit.

March 20, 1937.

*Writ of certiorari granted 57 S.Ct. 673, 81 L.Ed. ——. Judgment affirmed 57 S.Ct. 883, 81 L.Ed. ——.

208

Walter Bouldin, Wm. Logan Martin, and Borden Burr, all of Birmingham, Ala., for appellant.

Robert H. Jackson, Asst. Atty. Gen., and Sewall Key and J. P. Jackson, Sp. Assts. to Atty. Gen., for appellee.

Before FOSTER, SIBLEY, and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

The Charles C. Steward Machine Company sued the Collector of Internal Revenue to recover a tax of $46.14 collected from it as the employer of more than eight persons during the year 1936, by virtue of title IX of the Social Security Act (sections 901–910), 49 Stat. 639 (42 U.S.C.A. §§ 1101–1110). The tax is alleged to have been wrongfully and illegally assessed and collected because the Social Security Act is unconstitutional and void for reasons in brief as follows: (1) The act in purpose and effect coerces the enactment by the States of unemployment compensation laws. (2) It violates the Ninth and Tenth Amendments of the Constitution by setting up a federal system of unemployment compensation by controlling the administration of the State statutes and the moneys raised under them, thus intruding on the constitutional power and jurisdiction of the States. (3) By the system so created the property of the employers is taken without just compensation for the benefit of an arbitrarily defined class. (4) The

taxes imposed under the act are not for revenue to support the Government for constitutional purposes, but for the purpose of providing funds to support State administrations in matters beyond the province of the Congress to control. (5) The act violates article 1, section 1, of the Constitution by investing legislative authority in the Social Security Board in its stated activities. Refusal of an application for refund based on the same grounds was alleged. The District Court sustained a, general demurrer and dismissed the suit.

The question whether the tax is in conflict with the Constitution is thus presented, uncomplicated by the question of a remedy in equity on which the decision in Beeland Wholesale Co. v. Davis, Collector (C.C.A.) 88 F.(2d) 447, mainly went. Mindful of the established rule that a court will enquire into the constitutionality of a statute only when and to the extent that the case before it requires entry upon that duty, we are of opinion that we need not consider the Social Security Act as a whole (42 U.S.C.A. §§ 301–1305). The act deals with a number of subject-matters, somewhat related but separately regulated. It contains ten broad divisions or titles which might have been made separate acts. At the end is section 1103 (42 U.S.C.A. § 1303): "If any provision of this Act [chapter], or the application thereof to any person or circumstance, is held invalid, the remainder of the Act [chapter], and the application of such provision to other persons or circumstances shall not be affected thereby." The tax here disputed is laid under title IX (42 U. S.C.A. §§ 1101–1110), headed: "Tax on Employers of Eight or More." Its provisions are workably complete within themselves, and we need critically to examine them only. The first section in the title (42 U.S.C.A. § 1101) enacts that: "On and after January 1, 1936, every employer (as defined in section 907 [section 1107 of this chapter]) shall pay for each calendar year an excise tax, with respect to having individuals in his employ, equal to the following percentages of the total wages," etc. Section 905 (42 U.S.C.A. § 1105) provides that the taxes imposed shall be collected through usual channels and by usual procedure, and "shall be paid into the Treasury of the United States as internal-revenue collections." They enter the Treasury as free funds set apart to no special use and subject to be applied to any congressional appropriation. One of the purposes of the Social Security Act, as stated in its caption, is "to raise revenue." It originated in the House of Representatives as a revenue measure should. The Constitution, art. 1, § 8, names as the first power of Congress, "To lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States." The employment of another is such a transaction as may be the basis of an excise tax. The power of Congress in imposing excise taxes has been said to be subject only to the limitation that they be for the public welfare and be uniform throughout the United States. Flint v. Stone Tracy Co., 220 U.S. 107, 110, 31 S.Ct. 342, 55 L.Ed. 389, Ann.Cas. 1912B, 1312. A court should have strong reasons to conclude either that this is not a true excise tax to raise revenue, or that Congress did not intend it to be collected if some appropriation or other provision elsewhere in the act should fail. The appropriations are not of the proceeds of this tax or of any particular fund, but are general appropriations from the Treasury. No appropriation corresponds in amount with or is offset by this tax so as to justify a court in regarding the two as vitally joined in spite of the separability section of the act (42 U.S.C.A. § 1303).

There is, however, in the provisions of title IX touching credits against the tax matter which ties these credits to title 7 (sections 701–704 [42 U.S.C.A. §§ 901–904]) creating the Social Security Board, and to title III (sections 301–303 [42 U.S.C.A. §§ 501–503]) making grants to assist the States in the administration of their unemployment relief laws. Section 902 (42 U.S.C.A. § 1102) allows a taxpayer to take credit up to 90 per cent. of his tax for contributions which he has made to an unemployment fund under the laws of his State if those laws have been certified by the Social Security Board as conforming to certain standards specified in section 903 (42 U.S.C.A. § 1103). * If the Social Security Board and its function be unconstitutional, as is earnestly argued and as earnestly denied, the im-

---

* We do not consider the credits under sections 909 and 910 (42 U.S.C.A. §§ 1109, 1110) since they are not yet operative.

mediate effect would seem to be to render the credit impossible but to leave the full tax to be collected from every one. Notwithstanding the separability section of the act, it might be a serious question whether or not Congress would have enacted the tax without the credit provisions. It does not appear whether or not the present plaintiff obtained credit by complying with the Alabama Unemployment Insurance Act (Gen.Acts Ala.1935, p. 950, and amendments Gen.Acts 1936, pp. 176, 225, 228), which we judicially know has been passed and certified by the Social Security Board. The plaintiff does not complain of having. been denied a credit. It may not be in position to attack the provisions for a credit of which it has taken advantage. But we prefer not to be technical, and to consider the tax in connection with the credit provisions which link it with unemployment relief.

■ For many years and in numerous instances Congress has recognized with complete public acquiescence that calamities such as floods, droughts, earthquakes, and pestilences which, though local, exceed the resources of local government to meet, are matters affecting the general welfare of the United States, touching which its power to tax and the correlative power to spend may be exercised. The recent country-wide distress due largely to industrial unemployment has caused federal expenditure of billions, largely borrowed. Still it remains true that the relief of such conditions is primarily the duty and burden of the several States. These two interacting responsibilities we think are the key to the legislation under scrutiny. To refill the federal treasury and also to encourage the States to assume for the future their proper burden this tax with its credit scheme has been devised. There is in it no undue coercion or compulsion on the States. If they do not enact laws to meet the future need, the federal tax is to be collected in full to reimburse the federal treasury and to provide means for it to aid if necessary in the future. If the States arrange to carry their burden in the future by collecting funds for the purpose, the Congress, being relieved to that extent within those States, permits to be credited the contributions made by the taxpayers there, both in order to relieve them of a double load and as an acknowledgment of the potential benefit to the federal treasury produced by their local contributions.

■ In articles III and IX taken together Congress recognizes that the subject of unemployment relief by insurance or otherwise is primarily a matter for the States, but that by reason of recent experience the federal treasury is also involved, and that its reasonable protection is part of the general welfare in a constitutional sense. Grants to aid State agencies whose operations will tend to protect the federal treasury are thus justified. Such are grants to State educational institutions which will teach the military art and thus serve a federal need if Congress should have to raise an army. So the grants to States to improve their public roads assist also the federal function of establishing postroads, and the roads may serve military purposes in time of war. The policy of such grants and the fixing of their conditions and amount is for legislative, not curial, judgment. The tax here in issue is calculated to raise more money than is appropriated to aid State administrations even if all the States establish them, and the net result of it will be to put money into the Treasury as well as to aid federally protective State activities.

■ The conditions of the credit, as fixed by title IX, section 903 (42 U.S.C.A. § 1103), and to be judged of by the Board, are not without sound, discernible reasons. If the federal treasury is to be effectively protected by the State contributions, these contributions must be safely kept and must be of such incidence and such distribution as will fairly insure the results sought. To have the money put into the hands of the Secretary of the Treasury for investment in United States securities tends to safety, and may check unfavorable tendencies in the financial and banking world when unemployment comes to be relieved by the liquidation of the investments. It also affords another market for federal loans. Other details we do not find to be arbitrary. The Social Security Board acts as a sort of commission to administer and apply the act so as to secure its outlined purposes and prevent misuse of the generous credit.

■ The credit is not a penalty or coercion on the taxpayer. If his State has no unemployment relief law, his not getting the credit is not a punishment for any act of his. Not having contributed through his State to meet the unemployment peril, he merely contributes fully through the federal government. As an employer he

contributes about the same whether his State does or does not have an unemployment relief law. This equalization of the burden also tends to enable the States to pass such laws without exposing their citizen employers to a difficult business competition with employers in States which have none. There is thus a relief to the States from an embarrassment in their legislation on these lines, which frees rather than coerces them.

 Whether in practical effect the credit device which depends on State differences deprives the tax of the territorial uniformity throughout the United States which the Constitution requires in an excise tax is a question not pleaded or argued here, but see Florida v. Mellon, 273 U.S. 12, 47 S.Ct. 265, 71 L.Ed. 511. Nor is the question of requiring tax of employers of eight but not of employers of seven. This distinction was held to be without discoverable reason with relation to the unemployment insurance set up by the Alabama State Unemployment Insurance Law, and to deny equal protection both to employers and employes. Gulf States Paper Corporation v. Carmichael, Attorney General (D.C.) 17 F.Supp. 225, recently decided by a three-judge court in the Middle District of Alabama. An appeal is pending, and the conclusion was disapproved by the Supreme Court of Massachusetts in Howes Bros. Co. v. Massachusetts Unemployment Compensation Commission, 5 N. E.(2d) 720. But the statute before us is not a State law resting on the police power which under the Fourteenth Amendment must afford equal protection. It is a tax law of the United States to which that requirement does not apply. Congress had the right to look to mere bigness in laying the tax, and to exempt smaller pay rolls as not worth pursuing. La Belle Iron Works v. United States, 256 U.S. 377, 41 S.Ct. 528, 65 L.Ed. 998; Bromley v. Mc-Caughn, 280 U.S. 124, 50 S.Ct. 46, 74 L. Ed. 226; Flint v. Stone Tracy Co., 220 U.S. 107, 108, 31 S.Ct. 342, 55 L.Ed. 389, Ann.Cas.1912B, 1312.

 Since we hold the exaction to be a tax, there is no room for the contention that private property has been taken for public use without just compensation. The general benefits of government are the compensation for all takings through taxation. We think the tax and its credit are to be upheld as against the attack here made.

The judgment is affirmed.

